## J. HENRY JUDIK et al. vs. JOSEPH CRANE.

*Surrender of Lease by Mortgagor—Ratification of New Lease by Acts of the Parties—Mistake in Boundaries—Specific Performance—Marketable Title.*

Where leasehold property is mortgaged, a surrender of the lease and the acceptance of a new lease in its place by the mortgagor alone, has no effect as against the mortgagee and those claiming under him at a mortgage sale.

But such new lease may become valid by the ratification and acknowledgement thereof by the purchaser at the mortgage sale, and the reversioner.

The lessee of certain property, mistaking the lines of his lot as described in the lease, made his improvements partly on land not within his boundaries, but belonging to the lessor. The lessee mortgaged the leasehold interest, describing the same as in the lease. Subsequently the lessee surrendered the lease to the lessor and received a new lease, describing correctly the lot actually occupied by him. The mortgage was foreclosed and the lot conveyed to the purchaser by the description in the *first* lease and the mortgage. The rent or reversion, as described in the *second* lease, was conveyed to the plaintiff. The assignees of the leasehold paid rent to the reversioner, and all parties recognized their respective ownership of the lot actually occupied. *Held,*

1st. That the surrender of the old lease and the acceptance of the new one by the mortgagor—lessee, although not *per se* binding as against the mortgagee, was beneficial to all parties subsequently interested, and had been ratified and confirmed by their subsequent acts.

2nd. That the title of the reversioner to the lot actually occupied by the assignee of the lease was good, and specific performance would be decreed of a contract to buy the rent.

Appeal from a decree of the Circuit Court of Baltimore City (WRIGHT, J.), sustaining a demurrer to the bill of complaint in this case and dismissing the same. The bill prayed for a decree enforcing the performance of a contract by the defendant to buy an original irredeemable ground rent of $140 *per annum* issuing out of lot No. 418 Forrest street,

in said city.    The plaintiff's bill and exhibits showed that on August 24, 1871, a lease for ninety-nine years, with usual covenants and conditions, was executed by E. L. Rogers to J. M. Brock, reserving the annual rent of $240 out of a lot of ground on the southwest side of Forrest street, in the city of Baltimore, which is distinguished on the plat within the letters D, A, E, F (or lots A and B.) The lessee thereunder, Brock, not properly following or understanding the metes and bounds described by said lease, entered upon the lands and built his house [as distinguished on the plat by letters D, A, B, C (or lots B and C), and shaded.]    The lessee, Brock, also, after building, executed a mortgage of his leasehold interest, following the lines of, however, his then recorded title, D, A, E, F (or lots A and B.)

*After the erection* of his improvements *and the execution* of the *mortgage*, it was discovered that a mistake had been made by *Brock* in building outside of the lines of the original lease, and for the purpose of correcting the mistake, etc., on the 24th of July, 1872, Brock executed a *deed of surrender* by metes and bounds [D, A, E, F (or lots A and B) on plat], to his original lessor (Rogers), and on the same day Rogers, *being then* the *owner* of the fee in lot D, A, B, C (or lots B and C), on plat, leased it for a renewable term of ninety-nine years, with the usual covenants and conditions, to Brock, for the annual rent of $240, declaring in said lease that it was "intended to lease the land on which the house and improvements of the said Brock now stand, as the same are included within the description D, A, B, C" (or lot B and C.)

At the time of surrender and new lease, no attention was paid to the rights of the mortgagee of Brock, whose record claim was then against the lot on plat distinguished by D, A, E, F (or lots A and B.)

By a series of conveyances, *on May 17th*, 1894, the fee-simple title in the property and the reversion of $240 reserved by the lease from Rogers to Brock became vested in the appellant in this case—lot D, A, B, C (lots B and C) on plat—and on August 15th, 1894, the leasehold interest became vested in Lester E. Overton in lot D, A, E, F (or lots A and B) on plat. *Overton entered into possession* of the land on which the house and improvements built by Brock stood—lot D, A, B, C (or lots B and C) on plat—but received record-title of the old lot—D, A, E, F (or lots A and B)—because the mortgagee of Brock foreclosed his mortgage, and the subsequent owners under said foreclosure proceedings had to take the record title originally in the mortgagee. On October 24, 1894, Judik, the owner of the reversion, and Overton, the owner of the leasehold, executed a deed by which the rent was reduced to $140 per annum.

The cause was argued before ROBINSON, C. J., BRYAN, McSHERRY, BRISCOE, PAGE and BOYD, JJ.

*Harry M. Benzinger* and *Charles J. Bouchet* (with whom was *James S. Calwell* on the brief), for the appellants.

The owner of the leasehold is estopped by deed from refusing to pay the annual rent issuing out of the lot D, A, B, C (or lots B and C), and, being in possession, is compelled by law to pay the annual rent issuing out of the lot D, A, B, C, (or lots B and C). With reference to the triangle D, C, F, lot A, on plat; which was part of the original leasehold created by the lease of 24th August, 1871, that being the property of Lester E. Overton (*by record-title, though not his title nor the title of any of his assignors, back to Rogers by possession*) at the time when he executed the deed and agreement with the plaintiff, and fixed the lines D, A, B, C (or lot B and C) as the true ones, he had the right to eliminate it, as he then did, out of this discussion. All reasonable objections of the appellee being now con-

sidered with reference to the leasehold title, it is suggested by him that the reversion in an yearly rent of $140 is not an original and irredeemable ground rent. This objection cannot prevail. It is the original, irredeemable ground rent of two hundred and forty dollars reserved by the leases, reduced by proper and legal methods to a shape which now only permits its collection to the amount of $140 per annum, and at that amount it was purchased by the appellee. No essential feature of it is changed. It is a rent service, as declared by this Court in *Ehrman* v. *Mayer*, 57 Md. 621, 622, carries with it, as an essential incident of a rent service, the right to distrain, and *can be apportioned, and even a part of it extinguished*, without affecting the balance of the rent. See also *Worthington* v. *Cook*, 52 Md. 297; *Presstman* v. *Silljacks*, 58 Md. 328.

When Brock erected his improvements along the erroneous lines, he supposed that he was liable under the lease of August, 1871, and when it was discovered that there was an error, the title to the fee in lot C being then admittedly in Rogers, both lessor and lessee endeavored to, as far as possible, correct the mistake. And even if the deed of surrender amounted to nothing, it is clear that Brock, by the execution and recording of the paper of August, 1872 (whether it be considered a lease or a simple declaration), corrected the title to lots B and C for the benefit of both himself and those claiming under him, and specially charged those lots with the payment of the rent of $240 reserved by the lease of 1871.

This recorded estoppel relieves the case entirely of any character of claim which could be advanced by Brock or his assignees in lot C, and resolves this case into two considerations: 1st. As to whether the original rent of $240 can be partially extinguished, as was done by the recorded agreement extinguishing $100 of the original rent. 2nd. As to whether (Brock and his assignees being estopped, as above contended) the present leaseholder, being in possession of lots B and C, is not bound by the decision in *Ehr-*

*man* v. *Mayer*, *supra*, and is under obligation to abide by all
the covenants of the original lease as running with the land,
particularly the covenant for the payment of the annual
rent therein reserved. If these contentions of the plaintiff
are correct, then it is submitted that he is entitled to a de-
cree for specific performance as against the defendant
Crane. *Rieman* v. *Wagner*, 74 Md. 479; *Blight's Lessee*,
v. *Rochester*, 7 Wheaton, 547; *McLennan* v. *Grant*, 36 Pa-
cific Rep. 682; *Purinton et al.* v. *Northern Ills. R. R. Co.*,
46 Ill. 297; *Bulkley* v. *Devine*, 127 Ill. 406; 11 Howard
322; *Kelso* v. *Steiger*, 75 Md. 402; *Campbell* v. *Shipley*,
41 Md. 82.

*Richard Bernard* for the appellee.

While it is conceded that the first lease did not create a
good ground rent issuing out of the property sold to Crane,
it is very plain that the leasehold title to lots A and B, cre-
ated by the first lease, was never surrendered. The legal
title to this leasehold estate was, at the time of the surren-
der, vested in Brock's mortgagee, which was no party to
that surrender. When Brock's equity of redemption was
foreclosed, that was the end of the title surrendered. As
the surrender was inoperative and left the first lease in full
force, the title thereby created vested in the purchaser at
the mortgagee's sale. It follows, therefore, that the second
lease to Brock—so far as it affected lot B—was entirely in-
operative. This second lease operated to vest in Brock a
leasehold title to lot C; that title remains undisturbed to
this day. And we submit that the plaintiff cannot convey
to the defendant a good and marketable title to " an old,
original and irredeemable ground rent of $140 " issuing out
of lots B and C, because no such ground rent exists. If it
does exist, how was it created?—Not by the first lease to
Brock—that was a lease of lots A and B. · And there is no
such ground rent for sale. Not by the second lease; that
lease, as far as it affected lot B, was entirely nullified by the
foreclosure proceedings. It is conceded that Overton never

had any paper title to lot C before the execution of the
agreement between him and Judik ; then the leasehold title
to that lot was still outstanding in Brock, entirely unaffected
by anything that is shown to have transpired, Brock being
no party to the agreement.    But the appellants claim to
hold against Brock by adverse possession.    A landlord
cannot hold adversely to his tenant without repudiating the
lease, so that if that contention is correct, then that is the
end of the second lease, and all rights thereunder.

Apart from the objection that the leasehold title to lot C
is still vested in Brock, there is but one possible way that a
reversion and ground rent by paper title can arise out of
lots B and C, and that is to treat the deed and agreement,
Exhibit No. 7, as a new lease.    This paper was dated in
October, 1894, after Crane agreed to buy the property.    If
its effect is to create a renewable lease for over fifteen years,
then the rent issuing therefrom cannot be an irredeemable
rent.    Act of 1888, chapter 395, Code, Article 21, section
85 ; *Stewart* v. *Gorter*, 70 Md. 242.    We concede that it
is an extreme proposition that a mere abatement of a por-
tion of an irredeemable rent since the passage of the Act of
1888, renders the remainder of the rent redeemable.    But
there is nothing extreme in the proposition that parties can-
not, since the Act of 1888, by agreement, create a lease-
hold title and an irredeemable ground rent issuing out of a
lot of ground from which no such rent, or a rent for a larger
sum, issued before.

BRYAN, J., delivered the opinion of the Court.

The appellant and his wife filed a bill in equity against
the appellee for the specific performance of a contract for
the sale of certain real estate in the city of Baltimore.    On
demurrer the Court dismissed the bill with costs.

The property was sold by auction to the appellee for the
appellant, and was described as "an old and original irre-
deemable and well-secured ground rent of one hundred and
forty dollars per annum on No. 418 Forrest street, near

Gay street." We will state the particulars of the title. Edmund Law Rogers and wife, in August, eighteen hundred and seventy-one, leased to John M. Brock for ninety-nine years, renewable forever, a lot of ground on Forrest street, at the yearly rent of two hundred and forty dollars. The lot was quadrangular and the second and fourth lines were perpendicular to Forrest street. But Brock made a mistake in running his lines and made the second and fourth oblique in a direction parallel to Low street, which crossed Forrest at a short distance southwesterly; and he entered upon, enclosed and improved the lot thus bounded. The diagram attached to this opinion shows the two lots; the one described in the lease is marked at the corners by the letters D, A, E, F, and the one actually occupied is marked D, A, B, C. It will be seen that while the front of each lot is the same, the one which was occupied by Brock takes in on one side a small triangle not included in the lease, and leaves out on the other side another small triangle which was included in the lease. Brock mortgaged his leasehold, describing it according to the boundaries in the lease. After the execution of the mortgage, Brock, in July, eighteen hundred and seventy-two, executed a surrender of his lease to the reversioners, and received from them, on the same day, a new lease in the same terms as the former one, except that it described by correct metes and bounds the lot actually occupied by him. The leasehold was sold under and by virtue of the mortgage, and was conveyed to the purchaser by the description in the first lease. In May, eighteen hundred and ninety-four, the reversioners conveyed to David S. Collet the rent and reversion as reserved by the second lease, and he conveyed them to J. Henry Judik. Since the auction sale of the ground rent, Judik and wife have released for value a portion of the rent, amounting to one hundred dollars per annum, so that the amount now payable is one hundred and forty dollars per annum.

When Brock executed the surrender of his lease, he was not possessed of the legal title to the leasehold. That was

vested in the mortgagee, who was liable as assignee on the covenants of the lease. *Hintze* v. *Thomas*, 7 Maryland, 346, as explained in *Mayhew* v. *Hardesty*, 8 Maryland, 494. Brock held only the equity of redemption, which was afterwards barred by a sale under the mortgage. Upon the facts which we have stated (and they are those alleged in the bill of complaint), Brock's surrender of his lease and acceptance of another one in its place could have no effect against the mortgagee, or any tenant holding under title derived from him. Consequently the second lease and the reservation of rent contained in it would be inoperative to bind the successive assignees of the original leasehold. The Court therefore properly sustained the demurrer. But there are other facts very strongly implied, although not stated in the bill. From the known and ordinary course of business, we think it highly probable, in fact almost certain, that the assignees of the original leasehold who can claim title only under the mortgage sale, have entered upon and taken possession of the lot enclosed and improved by Brock, and have paid to the reversioner the rent reserved. If so, he has recognized them as tenants, and they have acknowledged him as their landlord. From this mutual recognition and acknowledgement very important consequences follow. In the first place, a party consenting to hold as tenant cannot afterwards deny the title of him who is acknowledged as landlord. This was said by this Court in a case where the tenant had originally entered upon land under another title, and subsequently to taking possession had consented to hold as lessee, and agreed to pay rent; *Isaac and Wife's Lessee* v. *Clarke*, 2 Gill, 1; an action of ejectment where it was necessary to prove a clear legal title. Another result takes place. Brock's surrender of the old lease, and acceptance of the new one were beneficial to him, because it secured him in the possession of the lot which he had improved; these transactions were also beneficial to the reversioner, because it gave him the security afforded by the whole of the improved lot. The benefit to Brock's suc-

cessors in the possession would be as great as the benefit
to him. Now, although his dealings with the leasehold
could not bind the mortgagee against his will, yet he could
have authorized it beforehand, and he could have ratified
it after it was done. And when his assignee (the purchaser
at the mortgage sale) took possession, he also had the right
to ratify and approve the advantageous arrangement made
between Brock and the reversioner. And he could not
ratify it in a more positive and unequivocal manner than by
taking and enjoying the benefits conferred by it. If he
took possession of the improved lot and paid the rent on
it, he sanctioned the substitution of it for the other and
adopted the adjustment made by Brock and the reversioner.
On the other hand, the consent of the reversioner would be
fully manifested by the acceptance of the rent. We would
then have as decisive and irrevocable a ratification as could
be made of a proceeding which originally was affected with
infirmity. No element would be wanting to give it efficacy.
There was notice of the surrender of the new lease, which
was given by the public land records; and the deliberate
acceptance of the benefits conferred by these instruments,
followed by the payment and receiving of a money consider-
ation in the form of rent. It is not necessary to refer to the
effect of continuous acquiescence for more than twenty
years, because the ratification had absolute validity as soon
as it was consummated, and it needed no support from
lapse of time. A case was decided by this Court some
years ago which illustrates in some respects the views which
we have expressed. In *Cook* v. *Creswell*, 44 Maryland,
581, a woman was tenant of certain land, and her husband,
acting as her agent, surrendered the term and accepted a
new one. The wife recognized the agency of her husband
and adopted and acted upon the change made in the ten-
ancy. It was held that she was estopped from insisting
that she had never surrendered the original term. The
question was presented in its simplest form, and the justice
of the decision is unquestionable. An attentive examina-

tion of the case will, however, show that an important principle was involved.   The third section of the Statute of Frauds enacts that no lease shall be surrendered unless by deed or note in writing, signed by the party so surrendering or by his agent thereunto lawfully authorized by writing. As the husband had no written authority, his surrender must have been invalid, and great injustice would have been done, except for the operative of the principle which we have been considering.   From such examples, we may see the wisdom and necessity of this maxim of the law, and its salutary influence in the conservation of justice.

The title is perfectly good if the facts are as we suppose them to be, and the complainants ought to be allowed to allege them by amending their bill.   To enable them to do so we shall remand the cause by the authority of section 36 of Article 5 of the Code, without either affirming or reversing the decree below.

*Cause remanded without affirming*
*or reversing the decree.*

(Decided June 19th, 1895.)