## CHARLES B. ENGLE ET AL. *v.* UNITED STATES FIDELITY & GUARANTY COMPANY

[Nos. 49-52, April Term, 1938.]

*Decided June 29th, 1938.*

The causes were argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, SHEHAN, and JOHNSON, JJ.

*George M. Brady* and *Arthur W. Machen,* with whom were *H. Vernon Eney* and *John Marshall Jones, Jr.,* on the brief, for the appellants.

*Charles McH. Howard* and *J. Kemp Bartlett, Jr.,* for the appellees.

SLOAN, J., delivered the opinion of the Court.

The bill in this case was filed by Charles B. Engle, J. W. Jakes, A. E. Kusterer, W. F. Enright, R. A. Packard, Alan H. Andrew and Lee R. Daly, called Plan Management Committee, and G. Walter Holden, Edith L. Charlton, Cyrus S. Mitchell, Laura M. Culver and The Florence Crittendon Home of Denver, a corporation, against the United States Fidelity and Guaranty Company, a Maryland corporation, the appellee, and the Federal Mortgage Company, a foreign corporation, on which there was no service, to declare a trust in favor of the

plaintiffs and others similarly situated. The defendant, appellee, demurred, and its demurrer having been sustained, the plaintiffs appeal. The plaintiffs filed two petitions for leave to amend, with drafts of the proposed amended bills, both of which were refused, and appeals taken from these orders. The chancellor then passed a decree dismissing the bill of complaint, so that, while we have four appeals in one record, there are two questions for decision, the sufficiency of the allegations to show a trust and its breach, and the right to amend.

According to the bill of complaint, the Federal Mortgage Company, a North Carolina corporation, with its office at Asheville, North Carolina—which we shall designate as the Mortgage Company—from October 1st, 1924, to December 1st, 1926, issued three series of real estate mortgage bonds, designated as Series A, B, C, D, E, F, G, and H, secured by three indentures to the Central Bank and Trust Company of Asheville, North Carolina, as trustee, hereinafter called the Trust Company. On October 1st, 1928, the Mortgage Company executed a fourth indenture to the Trust Company to secure two issues of bonds, designated as Series I and J, which are those involved in this appeal. Under the indentures the Mortgage Company deposited with the Trust Company as collateral first mortgages on real estate, government bonds, and cash, equal in face value to the full amount of the bonds issued. The obligation of the defendant, United States Fidelity and Guaranty Company, hereinafter called Guaranty Company, was, under the indenture, to guarantee the mortgage notes, accepted and approved by it, deposited by the Mortgage Company with the Trust Company, and interest thereon, and such other first mortgage notes as may be, from time to time, approved and accepted by the Guaranty Company, and this is the only obligation assumed by it under its bond to the Mortgage Company; it did not guarantee the payment of the mortgage bonds issued under any of the indentures.

The indenture, with respect to cash of the Mortgage Company which it might have on hand, provided that when such cash deposits should exceed twenty-five per cent. of the aggregate capital and surplus of the Trust Company, it should furnish to the Mortgage Company "* * * for the benefit of the holders of the bonds of the respective issues for the security of which said cash shall have been deposited a good and sufficient deposit bond of a surety company covering the full amount of the excess deposits, indemnifying the (Mortgage) Company for the benefit of the holders of the bonds for which said cash is deposited as security and of the United States Fidelity and Guaranty Company as guarantor of the obligations securing said bonds as their respective interests may appear against any loss in connection with such cash deposited." This provision, at the instance of the Baltimore Trust Company, the holder and seller of a number of the bonds, and fiscal agent and banker as to all of the bonds, in conjunction with the Guaranty Company and the Mortgage Company, was amended, in the indentures securing Series I and Series J, so as to provide that, in the event that the cash at any time should exceed five per cent. of the aggregate capital and surplus of the Trust Company, it shall furnish to the Mortgage Company a good and sufficient depositary bond of a surety company covering such excess deposits for the benefit of the bond holders, the United States Fidelity and Guaranty Company, and any other surety company guaranteeing the obligations securing the Mortgage Company's bonds. Thereupon a depositary bond was given to the Mortgage Company as obligee by the Standard Accident Insurance Company of Detroit, Michigan, in the penalty of $350,000, in which there was this provision: "In the event of loss hereunder the (Standard Accident Insurance) Company shall make payments to said Federal Mortgage Company and United States Fidelity and Guaranty Company, for themselves, and as Trustees, for the use and benefit of the holders of the bonds hereinbefore mentioned. Any payment made hereunder by

the (Insurance) Company to the said Federal Mortgage Company and United States Fidelity and Guaranty Company shall discharge the (Insurance) Company to the extent of such payment and the (Insurance) Company shall be under no obligation to see to the application by the Federal Mortgage Company and United States Fidelity and Guaranty Company, of any amounts paid to it hereunder." This is one of the provisions of the depositary bond invoked by the plaintiffs as fastening a trust and imposing liability upon the Guaranty Company for the benefit of the plaintiffs and those whom they represent, by reason of the cancellation by the Accident Insurance Company of its bond. The provision of the depositary bond for cancellation reads: "This bond shall be deemed cancelled at the close of business upon the effective date set forth in a written notice served by the (Insurance) Company upon said Federal Mortgage Company and United States Fidelity and Guaranty Company or by said Federal Mortgage Company and the United States Fidelity and Guaranty Company upon the (Insurance) Company, or sent by registered mail. Such date, shall, in case of cancellation by the (Insurance) Company be not less than thirty days from such service, or, if sent by registered mail, not less than forty-five days from the date borne by the sender's registered receipt."

The Insurance Company, on June 4th, 1930, gave notice of cancellation by registered mail to the Guaranty Company and to the Mortgage Company, received by the former June 6th, 1930, the notice to be effective forty-five days from date, which would be on July 19th, 1930, at which time there was on deposit with the Trust Company, applicable to bonds of Series I and J, a sum vastly in excess of $350,000, the penalty of the bond. The Trust Company continued in business until November 19th, 1930, when it closed its doors and its assets were placed in the hands of the Corporation Commissioner of the State of North Carolina for liquidation. The deposits to the credit of the Mortgage Company,

the day the Trust Company closed, were for Series I, $499,513.36, and for Series J, $274,092.

Another provision of the depositary bond, and the one which the plaintiffs insist imposed a duty upon the Guaranty Company, as trustee, the failure to observe which on its part resulted in the loss of $350,000 to the bondholders, on account of the cancellation of the depositary bond, is section B, which reads in part as follows: "At the earliest possible moment, and in any event within the ten (10) days after said Federal Mortgage Company and/or United States Fidelity and Guaranty Company shall learn of a default hereunder, said Federal Mortgage Company and/or United States Fidelity and Guaranty Company shall give the (Insurance) Company, such notice to be given by letter or telegram, addressed and sent to the (Insurance) Company at its Home Office, in the City of Detroit, Michigan, and the said Federal Mortgage Company and/or United States Fidelity and Guaranty Company shall, within sixty (60) days after such default, furnish to the Company affirmative proof of loss with full particulars and with a list of all bonds, indemnity and collateral, as aforesaid, duly sworn to. No suit to recover hereunder shall be brought, except in the name of said Federal Mortgage Company and United States Fidelity and Guaranty Company, for the use and benefit of those protected by this bond."

The plaintiffs, assuming that there had been a default by the Trust Company, as trustee, between June 5th and July 19th, 1930, alleged, "* * * that, the Guaranty Company, individually and as obligee under the Bond made to it by the Insurance Company and dated December 19th, 1929, did nothing between June 5th, 1930, and the expiration of July 19th, 1930, in the way of a demand upon the Trust Company as trustee, to turn over and deliver the cash which it had on hand to the end and purpose, so far as necessary, of maturing the said depositary bond given by the Insurance Company, but the Baltimore Trust Company, hereinbefore mentioned, in conference with the Guaranty Company and claiming to

represent bondholders of the Mortgage Company did demand that the Mortgage Company call upon the Trust Company as Trustee, to accept Federal Certificates in the sum of Three Hundred and Fifty Thousand ($350,000) Dollars" and to return or permit the withdrawal of "* * * a like amount in cash." The Federal Certificates were tendered "* * * to the end that the same might be earmarked and to that extent, the money on deposit with the Trust Company as Trustee might be secured should difficulties arise." The Mortgage Company, which it was charged was practically the same institution as the Trust Company—certainly its creature—declined the proposal of the Baltimore Trust Company, perhaps for either or both of two reasons, one that it (Baltimore Trust Company) had no authority under the indenture to make the demand; the other that to yield might have then and there closed the Trust Company.

The Guaranty Company, together with the receivers of the Mortgage Company and others, did sue the Insurance Company in the District Court of the United States for the Western District of North Carolina to recover the full penalty of the depositary bond of $350,-000, and from a decree dismissing their bill, they appealed to the Circuit Court of Appeals for the Fourth Circuit, where the decision of the District Court was sustained. *United States Fidelity and Guaranty Company v. Standard Accident Inc. Co.*, 76 Fed. (2nd) 643. In that case the court said there was evidence that the Trust Company was insolvent on June 4th, 1930, but there was no default while the notice of the surety was running "* * * for there had been no failure on the part of the bank, during the term of the bond, to make payment of the moneys on deposit to the persons entitled thereto under the indentures; and hence no breach of the bond giving rise to liability on the part of the surety before the cancellation became effective" (page 644). Of course, we are not passing on the facts, but what has just been quoted is applicable to the facts alleged in the bill of complaint, which includes the trust indenture, and

as modified, and the depositary bond, the truth of all of which the demurrer assumes. No matter what the allegations of the bill may be, they must be within the terms of the indenture and the bond, and they must show what duties the defendant was bound to perform, and wherein it violated them.

The charge against the defendant, upon which the plaintiffs rely, is that from June 4th to July 19th, 1930, "* * * it did nothing," to protect the bondholders, and they might have added "Itself," for no one needed protection more than it did, and this was recognized in the terms and conditions of the depositary bond. It was under no obligation, and it had no right, to give the ten days' notice to the Insurance Company unless there was a default by the Trust Company, trustee, and no fact of default, within the terms of the indenture and supplement, has been alleged by the plaintiffs; in fact the converse is the only inference to be drawn from the bill. There is no charge that the Trust Company had suspended payment to depositors or that it had declined to surrender $350,000 of cash to the credit of the Mortgage Company, which could only be done by the deposit, in lieu thereof, of mortgages approved and accepted by the Guaranty Company, government bonds, and other designated securities of equal value, which would be earmarked under the terms of the indenture. If such a proffer had been made by the Mortgage Company, the only one authorized to make it, and the trustee had refused the proffer, there would have been a default of which the Guaranty Company would have been required, on the plaintiff's theory, within ten days after knowledge of it, to give notice to the Insurance Company.

It was a default for the Trust Company not to secure a depositary bond in the place of the one cancelled by the Insurance Company, but that default did not occur until July 19th, 1930, when the only course open to the Guaranty Company was to sue on the bond "* * * for the use and benefit of those protected by this bond," and it did, after the cancellation of the bond, the only

thing it was authorized by the depositary bond to do, and that was to sue the Insurance Company, and thus test its liability, with the result told in 76 Fed. (2nd).

The defendant, Guaranty Company, was not unaware, unadvised, or ill advised of its lack of authority or power to avert the possibility of the loss of the cash on deposit with the Trust Company; it had no right to demand that it be withdrawn, and was not called on to use its own securities to make the substitution authorized by the indenture. It and the Baltimore Trust Company, which was heavily interested in the protection of the security behind the mortgage bonds, "in conference" decided upon what was a genuine effort to protect the deposit, by the Baltimore Trust Company taking $350,000 of its Federal securities, and requesting the Mortgage Company to demand the cash of the Trust Company and to substitute for it the bonds, which would be earmarked, in accordance with the terms of the indenture, and would have thus been made available for the protection of the bondholders and the Guaranty Company as well. They recognized the fact, as they had to do, that such demand and exchange could only be made by the Mortgage Company, which refused to act. As said in the concluding sentence in *United States Fidelity & Guaranty Co. v. Standard Accident Ins. Co.,* 76 Fed. (2nd) 643 " * * * we are forced to conclude that the deliberate and intentional failure of the mortgage company to establish a default during the effective life of the bond puts an end" to the plaintiffs' case.

The plaintiffs assume that at all times, under the depositary bond, the position of the Guaranty Company was that of trustee, whereas, under the express terms of the bond, it could not undertake or assume to act as trustee or otherwise until there was a default, and then only, on learning of a default, to give notice within ten days of such default; when such a situation arose and not until then could its position be said to be in trust, and until then it would not be required to account to any one. The plaintiffs have cited several authorities on the

duties and obligations of trustees to take action to protect the *cestuis que trust*, and to account for funds due to them from it, with all of which we agree, but in this bill we find no allegations from which it can be inferred that a situation had developed whereby the defendant was or became a trustee, and, if there was no trust, there was no liability. It is manifest from the terms of the depositary bond that it was given as much for the benefit of the Guaranty Company as for the bondholders, for they were all creditors of the Mortgage Company. The Guaranty Company was not an obligee on the bond of the Insurance Company, it and the bondholders were named as beneficiaries. In this case, however, instead of being merely a victim of the wrongs of the Mortgage and Trust Companies, it finds itself the culprit, charged with the commission of offenses which it was not obliged to prevent. The Insurance Company, in its depositary bond, gave it the authority to act, in the event of default, but whether it was obliged so to do (*Siegman v. Hoffacker*, 57 Md. 321, 325 ; 2 *Williston on Contracts* (2nd Ed.) sec. 401, p. 1152) is a question which we do not decide, as the case of the plaintiffs is predicated on a default between June 4th, 1930, and July 19th, 1930, which the allegations of the bill do not justify.

After the defendant had filed its demurrer to the original bill, the plaintiffs filed a petition for leave to file an amended bill and submitted a draft of the proposed amended bill. The chancellor thereupon passed an order that the demurrer to the original bill and the application for leave to file an amended bill be heard at the same time. November 13th, 1937, an order was passed sustaining the demurrer, and on November 17th, 1937, an order was passed refusing leave to amend, from both of which orders appeals were taken.

In the first amended bill the plaintiffs sought to enforce a trust on the defendant on three other depositary bonds given by two surety companies, as well as that of the Standard Company, altogether in the penalty of $800,000, all running concurrently, containing the same

terms and conditions, on the theory that they constituted one trust. Two of the bonds were given by the Century Indemnity Company, one for $50,000, the other for $300,-000, and one bond from the Independence Indemnity Company for $100,000. In the amended bill it was alleged that the Independence Company gave notice of cancellation August 21st, 1930, effective October 5th, 1930; the Century Company on its $50,000, September 5th, 1930, effective October 9th, 1930, and on its $300,000, October 11th, 1930, effective November 15th, 1930, four days before the Trust Company closed. Again the charge is made as to all of the bonds "* * * That upon receipt of the notices of cancellation in the last preceding paragraph the Guaranty Company, disregarding its duty, to its *cestuis que trust*, did absolutely nothing to protect their interests, but allowed the period between the date of notice of cancellation and the effective date of cancellation to elapse without taking any steps whatsoever to protect the interests of its *cestuis que trust*." The defendant contends that this request for amendment is an effort to present a wholly different case from that presented by the suit to enforce liability against the Standard Accident Insurance Company alone. In the second amended bill of complaint, which was also disallowed, the plaintiffs said: "This court, having ruled that the plaintiffs are not entitled by amendment to recover in this suit in respect to the depositary bonds of the Century and the Independence, the plaintiffs hereby expressly aver that they make no claim in respect to the depositary bonds of the Century or the Independence except in so far as any such claim could have been made upon the original bill"; an ambiguous statement which may either include or exclude the claims on the depositary bonds of those indemnity companies.

We are not going to discuss the merits or demerits of the amended bills, as the refusal of the chancellor to allow the amendments is not appealable. There is no misunderstanding what this court said in *Kernan v. Carter,* 132 Md. 577, 104 A. 530, when it was declared:

"It is only necessary to say in reference to the refusal of the lower court to allow the plaintiff to again amend the bill, that it was in the discretion of that court and there is no appeal from it. *Miller's Eq. Proc.* 231, sec. 182. The court doubtless thought that amendment could make no difference in its conclusion. The appeal from the order refusing to give leave to amend will be dismissed, and the order sustaining the demurrer and dismissing the bill will be affirmed."

The plaintiffs insist that this right, under Code, art. 16, sec. 17, and General Equity Rule 17, 134 Md. 33, is " * * * more mandatory" than at law (Code, art. 75, sec. 39), and says this court has " * * * repeatedly reversed even a judgment at law for failure to allow an amendment in a proper case," and cites *Sterling v. Marine Bank,* 120 Md. 396, 397, 87 A. 697; and *Gill v. Physicians' & Surgeons' Bldg.,* 153 Md. 394, 138 A. 674. Both were cases of attachment, in which, prior to the Act of 1898, ch. 44 (Code, art. 9, sec. 28), the proceeding being purely statutory, no paper necessary to give the court jurisdiction could be amended. In the first of the cases cited, *Sterling v. Marine Bank, supra,* which was five years before *Kernan v. Carter, supra,* while holding that it " * * * was error to have refused to permit" the declaration to be amended, the court said the ruling "was not of so serious a nature that if it constituted the sole error in the case it would require a reversal of the judgment; but, inasmuch as the judgment must be reversed on other grounds, it is proper to express the view of this court upon this exception." In *Gill v. Physicians' & Surgeons' Bldg., supra,* where the original attachment bond was characterized as "mere nonsense," one of the questions was whether the plaintiff should be allowed to file an amended and proper bond, " * * * to protect from loss the defendant, the garnishee, and every other person who may in fact be injured by the unjustified institution of the proceeding." That decision applies to cases of attachment, and is not authority in other forms of actions. The plaintiffs say in their brief that "* * * this court has

often remanded a suit in equity for amendment of the bill," and cites six cases in which this was done. In all of them, *Bayne v. State, use of Edelen,* 62 Md. 100; *Jeffrey v. Flood,* 70 Md. 42, 16 A. 444; *Judik v. Crane,* 81 Md. 610, 32 A. 276; *Commercial Building & Loan Assn. v. Robinson,* 90 Md. 615, 45 A. 449; *Gittings v. Baltimore City,* 95 Md. 419, 52 A. 937, 54 A. 253; and *Kaliopulus v. Lumm,* 155 Md. 30, 141 A. 440, the cases were remanded, without affirming or reversing the decrees, under Code, art. 5, sec. 42, so that we do not find anything in these cases to conflict with what was decided in *Kernan v. Carter, supra,* respecting the refusal of permission to amend. In this case we have no reason to take similar action for an amendment of the bill, to have the sufficiency of the grounds of the plaintiffs' case further amplified or better stated, as they are bound by the terms of the indentures and bond which they attempt to enforce against the defendant, and which cannot be altered by amendment or otherwise.

> *Order in No. 49 and decree in No. 52 affirmed; appeals in Nos. 50 and 51 dismissed with costs.*