## Suspended Sentence

Opinion to Honorable G. Harold Wagner, Auditor General.

MILLER, Deputy Attorney General, June 4, 1947.— This department is in receipt of your request for advice in which you ask if a court of quarter sessions may enforce a sentence of "fine $200.00 and pay costs

of prosecution, further sentence suspended" three and more years after the original judgment was rendered, by commitment, attachment for contempt or civil execution process.

You also ask if the sole power to authorize remission of uncollectible fines, actually due the Commonwealth, is vested in the Governor.

A court, upon the expiration of the term at which a final sentence is pronounced is without authority to alter, modify or vacate its judgment, except for clerical errors or matters of form: Commonwealth v. Rosser et al., 26 Luzerne 410 (1931) ; Commonwealth v. Harrison, 142 Pa. Superior Ct. 453 (1940) ; Commonwealth v. Denson, 157 Pa. Superior Ct. 257 (1945).

Suspended sentences are authorized by statutes such as the Parole Act of August 6, 1941, P. L. 861, sec. 25, 61 PS §331.25; the Probation Act of June 19, 1911, P. L. 1055, as amended, 19 PS §1051, and the Act of May 10, 1909, P. L. 495, 19 PS §1081. These statutes authorize the suspension of sentences and the probation of defendants for definite periods and under terms and conditions that are duly entered as a part of the record in each case.

Even without statutory authority, courts of record have inherent power under common law to suspend sentences: Commonwealth ex rel. McGinnis v. Ashe, 330 Pa. 289 (1938) ; Commonwealth ex rel. Paige v. Smith, 130 Pa. Superior Ct. 536 (1938) ; Commonwealth v. Wentz, 52 D. & C. 690 (1945).

The terms of the sentence you have cited, "fine $200.00 and pay costs of prosecution, further sentence suspended", are not within the provisions of the statutes authorizing and regulating suspended sentences, since at least part of the sentence has been imposed and no express terms and conditions, duly entered of record in the case, have been recited in the suspended portion. Regardless of the power of the court to clarify and impose the "further sentence suspended"

portion of the judgment within a reasonable time under its common-law powers, a sentence of "fine $200.00 and pay costs of prosecution" has been imposed and becomes a final judgment after the expiration of the term at which it was pronounced: Commonwealth ex rel. Nuber v. Keeper of Workhouse, 6 Pa. Superior Ct. 420 (1898).

In the case of Commonwealth v. Ciccone, 84 Pa. Superior Ct. 224 (1924), the court said (p. 227):

"By the Act of 1860 the court had the power to fine and to imprison; having done either, the power to resentence expired with the term."

After this case was decided, the Act of June 19, 1911, P. L. 1055, was amended by the Act of May 7, 1925, P. L. 554, 19 PS §1051, so that courts which have entered suspended sentences under the discretionary conditions authorized by the act, may, upon violation of the probation conditions, sentence defendants under the provisions of the original acts under which they were convicted, and the payment of money required as a condition of the probations, shall not be considered as the imposition of fines or sentences.

May then a defendant be imprisoned for his failure to pay a sentence of "fine $200.00 and pay costs of prosecution"?

Federal courts hold that the payment of a fine imposed by a court in a criminal prosecution may be enforced by imprisonment only where such consequence is expressly prescribed in the terms of the sentence: Hill v. United States ex rel. Wampler, 298 U. S. 460 (1936).

However, the courts of our Commonwealth hold that a sentence of a court of quarter sessions, ordering defendant to pay a fine, may be enforced by imprisonment, even though the sentence does not expressly direct imprisonment of defendant upon his failure to pay the fine: Commonwealth v. Borden, 61 Pa. 272 (1869); Commonwealth v. Hough, 1 Dist. R. 51 (1892); Commonwealth ex rel. Colbert v. Kerr,

42 Pitts. L. J. 367, 32 Atl. 276 (1895) ; Commonwealth ex rel. McAleese, 2 Dist. R. 499 (1892).

The Penal Code of June 24, 1939, P. L. 872, sec. 1104, 18 PS §5104, provides:

"In all cases where a remedy is provided or duty enjoined, or any thing directed to be done by the penal provisions of any act of assembly, the direction of said act shall be strictly pursued; and no penalty shall be inflicted, or anything done agreeably to the provisions of the common law in such cases, further than shall be necessary for carrying such act into effect."

In the case of Commonwealth ex rel. v. McClelland, 33 D. & C. 341 (1938), defendant was sentenced to pay a fine of $100 and costs. On his inability to comply with the sentence, he was committed to the county jail "until the fine and costs are paid or he is discharged by law". After institution of habeas corpus proceedings, the court said (p. 343) :

"I hold that the legislative authority to sentence a defendant to pay a fine carries with it the incidental power to imprison, upon failure to pay

. . . . . .

" 'Under the common-law rules, it is the practice, when a punishment inflicted is by sentence to pay a fine, to include in the judgment an order that the prisoner be committed to jail until the fine is paid. This has been the practice in England from the earliest times until a comparatively recent date at least, and it seems that it has never been successfully assailed on the ground that such judgment inflicted perpetual or indefinite imprisonment. The rule above stated has been followed very generally in this country, either from the adoption of the common-law doctrine, or under statutes in effect confirming it. . . . Committing a prisoner to jail until a fine is paid is no part of the punishment. The penalty, or the punishment adjudged, is the fine, and the custody adjudged is the mode of executing the sentence; that is, of enforcing

the payment of the fine. This is in accordance with the common law': 8 R. C. L. 269, §282, et seq."

In the absence of a statute or judicial decision limiting the period of time after imposition of final judgment, that a court may enforce its order to pay a fine, by imprisonment of defendant, the remedy is still available as on the day the sentence was pronounced.

After a final judgment of the court in a criminal action to pay a fine is once imposed, it can only be satisfied by payment, commitment of defendant, remission by the Governor, or in some circumstances discharge by operation of the insolvency laws of the Commonwealth or the bankruptcy laws of the Federal Government. The burden is on defendant to pay his debt to society after imposition of the sentence. If he delays in the performance of this duty, he is not entitled to relief from the full penalty imposed by the sentence, because there has been a passage of time since the conviction and the imposition of the original sentence: Miller v. Evans, 115 Iowa 101, 88 N. W. 198 (1901), 56 L. R. A. 101; Ex Parte Volker, 120 Neb. 508, 233 N. W. 890 (1931); Ex Parte Eldridge, 3 Okl. Cr. 499, 106 Pac. 980 (1910); Sartain v. State, 10 Tex. App. 651 (1881), Annotation 72 A. L. R. 1271; State ex rel. Libtz v. Coleman, 149 Fla. 28, 5 So.(2d) 60 (1941); Moore v. Littlefield, 153 Fla. 476, 14 So.(2d) 902 (1943); Etheridge v. Poston, 176 Ga. 388, 168 S. E. 25 (1933); Dixon v. Beaty, 188 Ga. 689, 4 S. E.(2d) 633 (1939); Ex Parte Silverman, 69 Ohio App. 128, 42 N. E.(2d) 87 (1942); 24 C. J. S. Criminal Law §1999; 72 A. L. R. 1271; 15 Am. Jur. Criminal Law §514.

In Ex Parte Salisbury, 98 Tex. Cr. R. 341, 265 S. W. 696 (1924), a defendant on conviction of aggravated assault in 1921, was sentenced to pay a fine of $450. After appeal the judgment was affirmed the same year. Defendant did not pay the judgment and in 1924 he

was remanded to custody. On habeas corpus proceedings, the court held (p. 342):

"On the facts revealed by the present record, at the time the mandate was filed, it was the privilege of the State to enforce the judgment by seizing the appellant under a *capias pro fine*, by forfeiting the recognizance by proceedings against the sureties, or by issuing execution against his property. See Carleton v. State, 45 Texas Crim. Rep., 73; 73 S. W. Rep., 1044. The duty of proceding [*sic*] by one of these methods was upon the officers of the State. A duty likewise rested upon the appellant and the sureties on his recognizance. He might have paid the fine or surrendered himself; so might the sureties. None of the officers of the State had the right to affirmatively release the appellant or waive the State's right to the satisfaction of the judgment of the court. They having no right to do so by affirmative action, it is our opinion that their neigligence [*sic*] in performing the duties which the law imposed upon them would not operate to discharge the appellant from the necessity of suffering the penalty imposed upon him by the judgment of conviction. Nor would the appellant's failure to pay the fine or satsfy [*sic*] the judgment deprive the State of the right to enforce it."

In your letter you express the thought that a charge of contempt should not be used to enforce payment of a fine three years or more after defendant's original conviction and sentence. All courts of record have the inherent right to punish for contempt, but the manner of its exercise is regulated by the Act of June 16, 1836, P. L. 784, as amended, 17 PS §2041, which restricts attachments and summary punishments for contempt to (1) official misconduct of an officer of the court, (2) disobedience or neglect by an officer, party, juror or witness of or to the lawful process of the court, and (3) misbehavior of any person in the presence of the court, thereby obstructing the admin-

istration of justice: Penn A. M. Co. v. Anth. Min. of Pa. et al., 114 Pa. Superior Ct. 7 (1934) ; Marks' Appeal, 144 Pa. Superior Ct. 556 (1941).

A contempt proceeding is a special and separate action, and, although courts do take cognizance of the passage of time since the court has had knowledge or reason to have had knowledge of the original commission of the contempt, no case has been brought to our attention where delay has prevented a court from enforcing its final sentence for the payment of a fine actually due the Commonwealth by means of an attachment for contempt.

In Marks' Appeal, 144 Pa. Superior Ct. 556 (1941), an alleged conspiracy to disobey the court's order to destroy gambling devices occurred approximately three years before the contempt proceedings were initiated. The court said (p. 564) :

"Any conspiracy shown by the evidence in this case was at most an indirect contempt and in our opinion Section 77 of the Act of March 31, 1860, supra, limiting the time within which prosecutions for certain crimes may be brought, should be held applicable by analogy and as constituting an effectual bar to the present prosecution. As in force at the time this proceeding was instituted, it provided: 'All indictments and prosecutions . . . for all misdemeanors . . . shall be brought or exhibited within two years next after such misdemeanor shall have been committed . . .'.

"Where an act sought to be punished is a criminal contempt, the court may, by analogy, adopt the limitation prescribed by statute for criminal prosecutions: Gompers v. United States, 233 U. S. 604, 34 S. Ct. 693, 58 L. Ed. 1115; 13 Corpus Juris, page 61, Sec. 84; 17 C. J. S. pages 83, 84, sec. 67.

. . . . . .

"Where an act sought to be punished as contempt also constitutes a crime, courts have frequently adopted by analogy the limitation prescribed by statute for

criminal prosecutions: Gordon v. Commonwealth, 141 Ky. 461, 133 S. W. 206; Goodall v. Superior Court in and for Santa Barbara County, 174 P. 924, 926, 37 Cal. App. 723; Beattie v. People, 33 Ill. App. 651."

Under the facts in Marks' Appeal, ante, the court held that process in the way of attachment for contempt, to be legally effective should have been issued within the time limit required by statute for a criminal prosecution of the crime under which the original prosecution or indictment was founded. However, it is pointed out that this case may not be authority for limiting the time for instituting an action for contempt for failure of a defendant to pay a fine actually due the Commonwealth. In the Marks' case, the lower court attempted to punish an officer of the court for his alleged disobedience of the court's order, which it was charged, occurred some three years before the contempt proceedings were brought. The production of witnesses and evidence in defense of this type of contempt after a period of three years could be an unfair burden on defendant.

Section 20 of the Act of June 16, 1836, P. L. 784, 17 PS §2080, authorizes courts of quarter sessions "to award process, to levy and recover such fines, forfeitures and amercements, as shall be imposed, taxed or adjudged by them respectively". Likewise, under the provisions of section 32 of the Criminal Procedure Act of March 31, 1860, P. L. 427, 17 PS §361, courts of quarter sessions are authorized "to award process to levy and recover such fines, forfeitures and amercements, as shall be imposed, taxed or adjudged by them respectively", which power has been held to include authority for the issuance of a fi. fa. for the collection of a fine and costs: Commonwealth v. Gabriel, 14 Dist. R. 862 (1904); McNamara v. Earley, 2 Pa. C. C. 491 (1887); Commonwealth, to use of Rowe, v. Rowe, 28 Dist. R. 496 (1919).

Under the provisions of the Act of May 8, 1901, P. L. 143, 12 PS §1001 ... "a copy of the said order, sentence, decree or judgment may be certified to any court of common pleas of the same county, and be entered and indexed in said court as a judgment with like force and effect as if the same had been recovered therein as a judgment of the latter court". The judgment then becomes a lien for the same period of. five years after the date of its entry: Beck v. Finnefrock (No. 1), 72 Pa. Superior Ct. 537 (1919).

A claim against the county for costs must be presented within six years or it will be barred by the statute of limitations: The County of Lancaster v. Brinthall, 29 Pa. 38 (1857); Zeidler v. Luzerne County, 1 Kulp 448 (1878); Lineberger v. Mercer County, 19 Pa. C. C. 532 (1897). The converse is not true, however, and unless the Commonwealth is expressly included in the terms of a statute, it is not embraced within the prohibition contained therein: Commonwealth v. Baldwin, 1 Watts 54 (1832); 1939-1940 Off. Op. Atty. Gen., p. 122; Commonwealth v. Yeakel, 1 Woodward 143 (1863); 38 Ill. Law Rev. 418 (1944).

It follows that unless otherwise provided by statute, a final judgment of a fine and costs may be enforced by fi. fa. issued by the court of quarter sessions or certified to the courts of common pleas in the same county, and execution by fi. fa. issued thereon, even though as in the case cited, three and more years have elapsed since the original pronouncement of the sentence, in addition to other means of enforcement, some of which are herein discussed.

You also state that a county controller has asked what procedure should be used to clear the county's books of fines which have been remitted by decree of its county court of quarter sessions, as well as. fines which may be definitely uncollectible by reason of death or other cause.

The provisions of section 9, art. IV of the Constitution have been judicially interpreted as having vested the Governor with the exclusive power to remit fines and forfeitures. A court of quarter sessions is without authority to amend or reform its sentence by remission of a fine, after the expiration of the term at which the sentence was imposed: Commonwealth v. Smith, 18 D. & C. 460 (1932) ; 36 C. J. S. Fines §18. In Commonwealth ex rel. Banks v. Cain, 345 Pa. 581 (1942), the court in discussing the remission of fines, states ". . . there is no legislation granting such power to any other authority, not even to the courts; . . .". Likewise, the county commissioners are without authority to remit a fine due the Commonwealth, and thus interfere with the judgment of the judiciary as well as usurp the pardoning power: Schwamble v. The Sheriff, 22 Pa. 18 (1853) ; Commonwealth ex rel. Johnson v. Halloway, 42 Pa. 446 (1862) ; Off. Op. Atty. Gen. 1909-10, p. 271, 18 Dist. R. 737 (1909) ; Commonwealth v. Mahoney, 32 Del. Co. 219 (1943).

In Commonwealth ex rel. Banks v. Cain, supra, the court held that, under the provisions of article IV, sec. 9, of the Constitution, the State Board of Parole is without authority to remit fines and a defendant who desires to release himself from actual payment of a fine ". . . must obtain a remission of the fine from the Governor, or take the benefit of the insolvency laws after serving such additional period of confinement as is prescribed by existing laws, or avail himself of the procedure provided by other legislation which may be applicable to his particular case".

However, article IX, sec. 909 of the Administrative Code of April 9, 1929, P. L. 177, 71 PS §299, provides as follows:

"The Board of Pardons shall have the power to hear applications for the remission of fines and forfeitures, and the granting of reprieves, commutations of sentence, and pardons, except in cases of impeachment,

and to make recommendations in writing to the Governor thereon, in the manner provided in and under and subject to Article IV, Section 9, of the Constitution of this Commonwealth."

Under the provisions of this section, applications for the remission of fines and forfeitures, as a matter of practice, can be made by the county official charged with their collection, to the Board of Pardons, for its consideration and recommendation thereon to the Governor.

Where a defendant dies after the sentence of a fine actually due the Commonwealth has been imposed and before its payment, remission, or other satisfaction, there is no statutory or other known legal authority for the exoneration on the county's books of the amount as an uncollectible item due the Commonwealth, except remission of the fine by the Governor. Costs which accrued prior to defendant's death, however, are not abated, and may still be enforced as a valid claim against the estate of the deceased defendant: Commonwealth v. Embody, 37 D. & C. 280 (1940).

It is our opinion, therefore, and you are accordingly advised:

(1) That the final judgment of a court of record to pay a fine and costs actually due the Commonwealth is enforcible, even after a period of three and more years of noncompliance, by commitment of defendant, execution against his property or attachment for contempt.

(2) That all uncollectible fines actually due the Commonwealth and charged to a county, may be exonerated only by the Governor.

It is suggested as a matter of practice that applications by a county for the remission of fines by the Governor are addressed to the Board of Pardons for its consideration and recommendation to the Governor thereon.