# PRINCE GEORGE'S COUNTY, MARYLAND *v.* COLLINGTON CROSSROADS, INC.

[No. 181, September Term, 1972.]

*Decided February 7, 1973.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES and LEVINE, JJ.

*Carl Harrison Lehmann, Associate County Attorney for Prince George's County,* with whom were *Walter H. Maloney, Jr., County Attorney,* and *Michael O. Connaughton, Associate County Attorney,* on the brief, for appellant.

*Toby Prince Brigham,* with whom were *Sasscer, Clagett, Channing & Bucher* on the brief, for appellee.

SMITH, J., delivered the opinion of the Court.

In *Prince George's County v. Beard,* 266 Md. 83, 84, 291 A. 2d 636 (1972), we labeled as "unduly optimistic" the comment of Judge McWilliams for the Court in *City of Bowie v. Board of County Commissioners for Prince George's County,* 260 Md. 116, 117, 271 A. 2d 657 (1970), when he said:

> "We shall be concerned here with another skirmish, *perhaps the last,* in the revolt of the appellants (Bowie) against the proposed Prince George's County airport." (Emphasis added.)

This case is in some respects a replay of *Beard.* It reaches us because the trial judge was convinced that the airport project had in fact been killed. We suspect

that as a result of our rulings in *Beard* and in this case yet other cases arising from this proposed project will reach us. One may express the hope that the litigation emanating from this battle will not continue as long as the Hundred Years' War or, perhaps, the Wars of the Roses which it resembles in some respects since one may draw the inference that this series of cases arise in part from a tussle for power and not simply from the never ending conflict between property owners and their government when property is to be taken for public purposes.

A petition was filed on August 22, 1968, by Prince George's County (the County) to condemn 323.5092 acres of land "for the construction, maintenance, and operation of a public airport facility." The case has not progressed with the speed one normally associates with the trial of cases in the Seventh Judicial Circuit. On January 31, 1969, the County asked for a separate trial of issues of law since appellee, Collington Crossroads, Inc. (Collington), had "filed an answer denying the necessity and public purpose of the taking of the subject property." Collington then made a similar request. Trial of that issue began on July 2, 1969, continued the following day, and then was recessed until July 21, 1969. Trial did not resume, however, until more than a year later, July 29, 1970. There were some apparent problems of availability of counsel and some apparent attempts to settle in the interim. On June 11, 1971, the County filed a motion to amend its petition for condemnation. This came on for hearing on August 30. There was then an indication of the pendency in the County Council of the White Bill, to which we shall later allude. The matter was postponed until after that was resolved. Another hearing was held on November 15, 1971, and an opinion was filed on March 3, 1972. On March 16, 1972, the court passed an order denying the motion to amend and dismissing the case, from which a timely appeal was taken to us.

Apparently unmindful of the holdings of this Court in cases such as *Director v. Oliver Beach Imp. Ass'n,* 259

Md. 183, 191, 269 A. 2d 615 (1970); *Johnson v. Gas & Electric Co.,* 187 Md. 454, 50 A. 2d 918 (1947); *State Roads Comm'n v. Franklin,* 201 Md. 549, 95 A. 2d 99 (1953); and *Murphy v. State Roads Comm'n,* 159 Md. 7, 149 A. 566 (1930), a substantial part of the trial time was used up in an attempt by Collington through the testimony of an airport planner, designer, civil engineer, and consultant to attack the layout plan of the proposed airport.

In the trial court and here Collington has referred to Chapter 689 of the Acts of 1968 and the fact that as originally introduced in the General Assembly it provided for "acquisition by purchase, condemnation or any other legal means" of the land for the project which was amended in its trip through the General Assembly to read "acquisition, by any legal means." It draws the inference from this change that the County was without power to condemn, overlooking the fact that prior to the adoption of charter government by Prince George's County its county commissioners, along with the county commissioners of every other county in the State, under Code (1957, 1966 Repl. Vol.) Art. 25, § 11A had authority "to acquire by . . . condemnation . . . any property, or any interest therein, of any kind needed for any public purpose . . . ."

Collington pointed to the fact that the plan called for only 79.86 acres of land to be used for the airfield and then claimed that use of the remainder for an industrial park was not such a public use as would justify acquisition by the County under the power of eminent domain. Later, when it seemed that there was a possibility of a shortening of the runways, it contended that all of its land would be acquired for industrial park purposes. At one point in the proceedings, when the alleged bad faith of the county commissioners was being probed, the chairman of that body at the time the decision was made to acquire the land (but not chairman as of the time of testimony) said in response to a question from the trial

judge that she was sure the commissioners would have no objection to indicating in covenants or contracts that the land would "be used for airport facilities and no other way." She had said earlier, "I am not sure that the Commissioners would necessarily have said, 'Well, if we can't make this an airpark, industrial park and airport, we will do away with the airport altogether.' "

Charter government came to Prince George's County. The county charter became operative on February 8, 1971, when the County Executive and County Council took office. The County Council passed Council Bill 19-1971, sometimes known as the "White Bill." This declared the land acquired for the public airport facilities and industrial park mentioned in Chapter 689 of the Acts of 1968 "surplus property." It directed the County Executive "to sell the land at public or private sale as expeditiously as [was] feasible." The trial judges in *Beard* and in this case were each of the opinion that this action constituted an abandonment of the project. The determination in this case was made prior to the argument in this Court of *Beard*.

In *Beard* the County took the position that under the county charter a capital project included in the capital budget could only be abandoned as specified in the charter, which meant only when the County Council received such "a recommendation in writing from the County Executive [and it], after public hearing and with the affirmative vote of two-thirds of its members, amend[ed] the County budget in accordance with such recommendation . . . ." The property owner there contended there was no authority in the County "to condemn private property for a publicly owned and operated industrial park leased, in major part, to private industrial and commercial interests." We remanded the case without affirmance or reversal, saying that on that record we were unable to effectively answer either question. On the issue of abandonment we held that if on the remand it was established that the project had been included in

the capital budget adopted by the County Council, then the County Council alone could not abandon the project. As of that time, the County admittedly had no plan for development of the industrial park. We said that "[u]pon the remand the County [would] have full opportunity to spell out the use it propose[d] making of the property and all the details surrounding that use," that in the record before us "the County Executive [having been] unable to say what use [would] be made of the property," that "[f]or us to hold on such a record that a public use ha[d] been established would be to hold, in essence, that a public body [might] condemn private property for any purpose which suit[ed] its convenience which . . . would make the rights of property solely dependent upon the will of a legislative body, without restraint. Such is not the law."

The motion to amend here was to conform the petition for condemnation to the directive contained in an executive order dated September 21, 1971, (to which reference was made in *Beard*) so that the acquisition would be "exclusively for the industrial park purpose permitted in" Chapter 689 of the Acts of 1968 (the authority for the bond issue). The trial judge held the passage of the White Bill "makes moot the motion to amend inasmuch as the 'White Bill' specifically provides for abandonment of the entire project (including the industrial. park) which the Executive seeks to enforce." He added, "Having found that the legal legislative body has in effect abandoned the entire project compels us to dismiss the condemnation in its entirety as there is no existing authority to proceed in any condemnation of any portion of subject property." He did not allude in his opinion to the motion to amend other than to say at the very beginning that there had been such a motion and to then comment that "[t]he more salient pending motion [was] the Motion to Dismiss inasmuch as a dismissal of same would dispose of the entire matter." In the order passed subsequent to the filing of his opinion the trial judge

dismissed "with prejudice" the condemnation proceeding and at the same time denied the motion to amend.

There are two reasons here for reversing the dismissal of the condemnation action. First, our holding in *Beard* was that passage of the White Bill did not constitute an abandonment of the project if the project had been included in the capital budget. We are advised by the County in this case, and Collington does not take issue with that point, that the project was included in the capital budget. Secondly, the County Council has modified the White Bill or Bill No. 19-1971. More than a century ago our predecessors in *Day v. Day,* 22 Md. 530 (1865), said:

> "[W]e are bound to decide according to existing laws, even though a judgment, rightful when rendered by the court below, should be reversed as a consequence." *Id.* at 539.

This holding was cited and followed by Judge Hammond for the Court in *Yorkdale v. Powell,* 237 Md. 121, 124, 205 A. 2d 269 (1964), and by Judge Markell for the Court in *Woman's Club v. State Tax Comm.,* 195 Md. 16, 19, 72 A. 2d 742 (1950). In *Yorkdale* Judge Hammond added only the qualifying words "unless vested or accrued substantive rights would be disturbed or unless the legislature shows a contrary intent." By Bill No. CB-85-1972 passed by the County Council of Prince George's County on November 29, 1972, and approved by the Executive on December 15, 1972, Bill No. 19-1971 was amended "so as to authorize the County Executive to retain all property acquired at the intersection of Maryland Route 214 and U. S. Route 301 for the purposes of an Industrial Park and to authorize the continued acquisition of land by purchase or condemnation under the provisions of Chapter 689 of the 1968 Acts of the General Assembly for an Industrial Park only." The same act directed the Executive "subject to the confirmation of the Council" to "appoint an Industrial Park Task Force . . . consisting of not more than 15 mem-

bers" for the purpose of "conducting appropriate market analyses and feasibility studies" and for "preparing a comprehensive site development plan" for the area in question, for "advising the County Government as to the costs and benefits involved in alternative ownership and leasing arrangements; and [for] preparing an action program for implementing the Task Force's recommendations," the "final report, comprehensive plan, and implementation program recommendations [to be submitted] to the County Council and County Executive by July 1, 1973." Incidentally, this bill was introduced in the County Council prior to the argument in *Beard*, although not passed until much later. Aside from our holding in *Beard*, it is obvious that this bill is authority for saying that the project has not been abandoned by Prince George's County.

Having determined that there was error in dismissing the condemnation petition, we now address ourselves to the question of whether an amendment to the petition to reflect the changed purpose should be permitted as urged by the County. There can be no appeal from an interlocutory order refusing to permit an amendment, *Engle v. Fidelity & Guaranty Co.*, 175 Md. 174, 200 A. 827 (1938), but, of course, the County's appeal of the order of dismissal then made subject to review all interlocutory orders. Maryland Rule 887.

Rule 320 d 1 (b) provides that "leave to amend shall be freely granted in order to promote justice." In *Concannon v. State Roads Comm.*, 230 Md. 118, 123, 186 A. 2d 220 (1962), Chief Judge Brune noted for the Court "that eminent domain proceedings can be amended at the instance of the condemnor so long as there is no prejudice to any substantial right of the property owners." *See also* Rule U13.

It is the contention of Collington that the proposed amendment would affect its substantial rights. Among others, it points to the matter of valuation of the land and seems to suggest that in some way it would be en-

titled to more money from a jury if the County had to start afresh than it would be entitled to receive under this proceeding. Code (1972 Interim Supp.) Art. 21, § 12-104 provides that the value of the property condemned in a case such as this where the taking has not already occurred shall be determined as of the date of trial, a provision identical with that appearing in Code (1957, 1971 Repl. Vol.) Art. 33A, § 4. The only limitation imposed under § 12-106 (a) of Art. 21 (identical with prior Art. 33A, § 6) is an exclusion of "any increment in value proximately caused by the public project for which the property condemned is needed." Protection is provided for the landowner, however, by the further provision of § 12-106 (a) for addition to the fair market value so determined of "the amount, if any, by which such price reflects a diminution in value occurring between the effective date of legislative authority for the acquisition of such property and the date of actual taking if the trier of facts shall find that such diminution in value was proximately caused by the public project for which the property condemned is needed, or by announcements or acts of the plaintiff or its officials concerning such public project, and was beyond the reasonable control of the property owner." *See Baltimore City v. United Stores,* 250 Md. 361, 243 A. 2d 521 (1968).

A second reason advanced by Collington for not allowing the amendment (and obviously feared by the County) is that Collington "is entitled to be reimbursed for all of its substantial attorneys' fees and costs guaranteed to it when a condemnation action is involuntarily dismissed or abandoned." Maryland Rule U26 a and Art. 21, § 12-110 (a) in identical language provide that "[t]he exclusive method of abandoning a proceeding for condemnation shall be by the plaintiff's filing in the proceeding a written election to abandon it." In such case Maryland Rule U26 d and § 12-110 (d) provide that "the defendant shall be entitled to recover from the plaintiff the reasonable legal, appraisal and engineering fees ac-

tually incurred by the defendant because of the condemnation proceeding."

Code Art. 21, § 12-107 (b) (5), as did former Code provision Art. 33A, § 7 (b) 5, provides that "if the judgment is for the defendant on the right to condemn" there shall be "[a]n allowance to the defendant, to be fixed by the court, for the reasonable legal, appraisal and engineering fees actually incurred by the defendant because of the condemnation proceeding . . . ."

We are of the opinion that no substantial right of Collington would be adversely affected by the amendment proposed by the County and that the ends of justice would be best served by permitting the amendment in order that there may be a prompt disposition upon the merits of the actual controversy between the parties. As we see it an amended petition here would be but little different from a supplemental bill in equity.

We express no opinion as to whether the use of the land of Collington contemplated by the County is or is not one for which an eminent domain proceeding may be maintained since, as indicated in *Beard,* we do not have sufficient information before us to make such a determination.

Certainly a corollary to leave to amend should be agreement upon the part of the County to proceed to trial within a reasonable time. The property owner is entitled to have the sword of Damocles suspended over its head in the nature of this condemnation proceeding removed by trial at an early date. The County should either perfect its plan and proceed expeditiously or dismiss the proceeding.

> *Order reversed and remanded for further proceedings; Prince George's County to pay the costs.*