BEULAH I. TIMANUS *v.* JOHN J. TIMANUS

[Nos. 25, 26, October Term, 1940.]

*Decided December 13th, 1940.*

The causes were argued before BOND, C. J., PARKE, SLOAN, MITCHELL, JOHNSON, and DELAPLAINE, JJ.

*Sophie Nordenholz,* for the appellant.

DELAPLAINE, J., delivered the opinion of the Court.

Beulah I. Timanus, the appellant, instituted suit in the Circuit Court for Baltimore County for a divorce *a mensa et thoro* from her husband, John J. Timanus. The husband was granted on cross-bill a divorce *a vinculo matrimonii,* but the decree was reversed by the Court of Appeals. *Timanus v. Timanus,* 177 Md. 686, 10 A 2nd 322. On February 29th, 1940 the chancellor, in compliance with the mandate, dismissed the cross-bill and granted a divorce *a mensa et thoro* to the appellant. The final decree awarded permanent alimony at the rate of fourteen dollars a week.

The first of these appeals is from the alimony award. The appellant contends that the allowance is not sufficient for her maintenance and not commensurate with the means and station in life of her husband. She alleged that, after they had lived together for thirty-five years, his cruelty became so unbearable that she was unable to cohabit with him any longer. According to the testimony taken on February 29th, 1940, she has been living in the apartment of her married daughter, to whom she pays five dollars a week for board, but she is obliged to sleep in the living room on a cot. She is under the care of a physician and needs money for medicine and food for special diet. She says she still has about half of the fund of $750 which she received from her husband in settlement of her interest in his real estate. But she says that on account of her impaired health and her age she is not able to work for a living.

The appellee is a lawyer practicing in Towson. Prior to the separation, his income was approximately $4000 a year. He now holds the position of zoning clerk for the County Commissioners of Baltimore County, which pays an annual salary of $3000. He explained that he had taken this position because his income had been dwindling as a result of his ill health, and he was apprehensive that he might soon be compelled to abandon his practice entirely. Nevertheless, he admitted that since August 1st, 1939, his attorney fees had been averaging more than $170 a month. Thus his gross income exceeded $420 a month.

It is a general rule that a court, before determining the award of alimony, should consider the maintenance of the wife in accordance with the husband's duty to support her suitably, together with the husband's wealth and earning capacity. In addition to the financial circumstances of the parties, the court should also usually consider their station in life, their age and physical condition, ability to work, the length of time they lived together, the circumstances leading up to the separation, the fault which destroyed the home, and their respective responsibilities for the care and support of the children.

The award should be made in an amount sufficient to support the wife in reasonable comfort in her station in life. But when the husband owns no property, the court can not base the award of alimony upon a hope of gratuities or a mere surmise that he will receive them. The wife is entitled to demand such support as her husband is reasonably able to furnish from his property or earnings. In applying for alimony, a wife is not asking for favors, but demanding rights, and these rights should be considered in connection with her husband's capacity. *Wygodsky v. Wygodsky,* 134 Md. 344, 347, 106 A. 698, 699; *Roberts v. Roberts,* 160 Md. 513, 525, 154 A. 95, 100; *Muir v. Muir,* 133 Ky. 125, 92 S. W. 314, 909; *Hooper v. Hooper,* 102 Wis. 598, 78 N. W. 753, 755; *Boyden v. Boyden,* 50 R. I. 326, 147 A. 621.

The appellee now lives alone in his eight-room home at Woodlawn, Baltimore County. The property is mortgaged in the sum of $5000, but a lot of about one acre, valued at between $700 and $800, is included in the mortgage. He stated that he owed $550 in interest on the mortgage and also the taxes for 1939. He declared that he has been unable to sell the property, and that to make it more salable he papered, painted, and repaired the interior at a cost of $184.50. His only other real estate is a vacant house worth about $1000, which is subject to a mortgage for $1350, on which he owes $180 in interest. He bought a new automobile, a Nash coupé, requiring a cash deposit of $534 and additional payments until January, 1940. While the county pays mileage for trips on zoning work, he estimated that it cost him more than $126 to operate his car in seven months. He testified that he drives twenty-six miles every day to his sister's home for breakfast, and that his practice, principally building association work, requires some "running about the county." The court should never make an award of alimony so excessive as to oppress or dishearten the husband, but the wife should not be caused to suffer in loss of maintenance on account of her husband's extravagance. Current expenses in the period of seven months included office rent, $119; stenographic work, $215; tele-

phone, $54.25; oil for heating home, $63.55; electricty, $24.50; operation of automobile, $126; stationery and stamps, $25; fire insurance, $21. In addition to these expenses, which averaged more than ninety-two dollars per month, he also had court costs, counsel fees, and alimony *pendente lite,* as well as medical and hospital expenses. While the award of alimony is largely within the discretion of the trial court, we conclude from all the circumstances of the case that the allowance made by the chancellor is insufficient for the appellant's maintenance. We are of the opinion that permanent alimony should be allowed at the rate of seventy-five dollars per month, subject to the further order of the Court.

The second appeal is from the refusal of the chancellor, on June 7th, 1940, to order the appellee to pay the costs and a counsel fee in connection with the appeal from the alimony award. It is well settled that a husband should be required to pay alimony and counsel fees for services for his wife, both in the trial court and in the Court of Appeals, when it appears that the wife's income is insufficient to care for her needs. Code, art. 16, sec. 17; *McCurley v. Stockbridge,* 62 Md. 422, 426; *McClees v. McClees,* 160 Md. 115, 130, 152 A. 901, 907. When a wife has a reasonable ground for complaining of the amount of alimony awarded her, and takes an appeal in good faith, the court should order the husband to pay the costs of the appeal. An application to order the husband to pay his wife's costs and counsel fees for the prosecution of an appeal should be acted upon by the chancellor, as such matters are within the jurisdiction of the trial court after the appeal has been entered. *Dicus v. Dicus,* 131 Md. 87, 101 A. 697. Therefore, the order of the chancellor dismissing the petition for costs and counsel fee must be reversed. It is the opinion of the court that a counsel fee of fifty dollars should be allowed to the solicitor for the appellant.

> *Decree in No. 25 reversed in part and affirmed in part, and order in No. 26 reversed, and cases remanded, with costs.*