ALDA H. DOUGHERTY *v.* WILLIAM F. DOUGHERTY

[No. 161, October Term, 1945.]

*Decided July 23, 1946.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, and HENDERSON, JJ.

*Hyman Ginsberg,* with whom were *Ginsberg & Ginsberg* and *Harry Leeward Katz* on the brief, for the appellant.

*Henry M. Siegel,* with whom were *Siegel & Siegel* on the brief, for the appellee.

DELAPLAINE, J., delivered the opinion of the Court.

Alda H. Dougherty appealed from a decree of the Circuit Court of Baltimore City dated January 22, 1946, granting her husband, William F. Dougherty, a divorce *a vinculo matrimonii* on the ground of adultery, and dismissing her cross-bill for alimony on the ground of abandonment.

The parties were married in 1918 and have one daughter, now divorced. Complainant, now over 45 years old, has been employed for many years by the Baltimore and Ohio Railroad Company, and is now a

special inspector for that company. From 1926 to 1941 the parties resided in a comfortable home at 41 Overbrook Road in Catonsville. But Mrs. Dougherty became increasingly dissatisfied with her husband, and often visited at night the home of Mrs. Moran on South Paca Street in Baltimore. To investigate her conduct, her husband waited for her outside the house on Saturday night, June 7, 1941, and when she returned at 2 A. M., noted the license number of the automobile. From the Commissioner of Motor Vehicles he learned that it was owned by a man named Kelly. On Saturday night, June 14, Mrs. Dougherty was away from home again. On Saturday night, June 21, her husband trailed her and Kelly and another couple from Mrs. Moran's home to the Hermann Hotel, then to a house on Curley Street, and finally about 1 A. M. to Frederick Avenue, near Overbrook Road, where Kelly parked the car and turned off the lights. Complainant, following with two friends, parked close behind, and when he walked up to the car and pointed a flashlight on the front seat, he saw his wife and Kelly embracing. During the rest of the night he stayed at the home of one of his friends. The next day he phoned his regrets to his wife, but she defiantly retorted that he did not see her "in bed with Mr. Kelly."

Since that time complainant has been living in an apartment in Baltimore, while his wife has continued to live in their home, which they hold as tenants by the entireties. She also continued her visits to the home of Mrs. Moran, where she became acquainted with a married man named Thomas Lucatuorto. On the night of February 28, 1942, she was in his automobile when it knocked down and fatally injured a pedestrian in Irvington. In the report of the accident to the Commissioner of Motor Vehicles, Lucatuorto listed her as a witness under the name of Patricia Dougherty, as she was called by her friends, and gave her address as 735 Carroll Street, Baltimore. At the hearing in the Southwestern Police Station, where he was released

on bail for action of the grand jury, he swore that she was his fiancee. In 1942 Lucatuorto was sued for divorce in the State of New York on the ground of adultery with Mrs. Dougherty. In the court below Mrs. Dougherty swore that she had never made any affidavit or signed any paper in connection with the Lucatuorto divorce suit; but when she was confronted with a copy of her affidavit that she had not committed adultery with Lucatuorto but had been employed by him as a "domestic cleaning woman," she admitted that she made and signed the affidavit, and also that she conferred in New York with Lucatuorto's attorney. It further appears that Lucatuorto was a frequent visitor in Mrs. Dougherty's home, and that she was a frequent visitor in Lucatuorto's summer retreat, a bungalow at Margate's Shore in Anne Arundel County. In 1943 complainant made three trips there to watch his wife. The first was on the night of July 29. Accompanied by two friends he arrived there at 10 P. M., and saw his wife and Lucatuorto arrive about 11:30. He testified that the lights in the house were turned on, but about an hour later were turned off, and when they left at 3 A. M. the house was still in darkness. On August 6 and August 13 complainant and his two friends watched again. On these nights, as in July, Mrs. Dougherty and Lucatuorto returned together, and no one else entered the bungalow.

It is an established rule that the burden of proof in a suit for divorce is upon the complainant, and where adultery is charged the evidence must establish affirmatively that the alleged offense was committed. It is not necessary, however, to establish the charge of adultery by direct evidence of the commission of the act, for because of the clandestine nature of the offense it is rarely possible to obtain evidence of the commission of the act by the testimony of eyewitnesses. The offense may be inferred from the circumstances if the inference is the only natural and logical deduction to be drawn therefrom. To prove adultery, the circumstantial evidence must clearly establish (1) a disposition on the

part of the defendant and the paramour to commit adultery, and (2) an opportunity to commit the offense. After considering these and all other facts and circumstances in the case, the court then determines whether the evidence would convince an unprejudiced and cautious person of the guilt of the defendant. The permanent consequences of adultery are so injurious to the parties that the court will not accept as sufficient proof of its commission anything less than evidence so clear, satisfactory and convincing as to raise in the mind of a reasonable and unprejudiced person a natural inference of guilt. We do not consider the use of circumstantial evidence harsh or unreasonable, for it applies only to those who, by open disregard of the moral and social conventions and decencies of life, have shown themselves indifferent both to their marital obligations and to the opinion of others. *Dicus v. Dicus,* 131 Md. 87, 101 A. 697; *Pattison v. Pattison,* 132 Md. 362, 103 A. 977; *German v. German,* 137 Md. 424, 112 A. 789; *Wendel v. Wendel,* 154 Md. 11, 24, 25, 139 A. 573; *Swoyer v. Swoyer,* 157 Md. 18, 31, 145 A. 190; *Harward v. Harward,* 173 Md. 339, 356, 196 A. 318.

In this case the evidence unmistakably shows an adulterous disposition of defendant. The fact that a married woman is so indifferent to the conventions of life as to exhibit affection in an automobile parked on a public street after midnight affords evidence of an adulterous disposition which, if unexplained, may be accepted as ample proof of such a disposition. Also it is abundantly clear that defendant had innumerable opportunities to commit adultery. She did not deny that Lucatuorto occasionally spent the entire night in her home, and that he kept some of his clothes there. Nor did she deny that she lived with him along the river in the summers of 1942, 1943, 1944 and 1945. It is incredible that any woman with any reputation to lose would risk it by receiving constant attentions of a married man by entertaining him alone in her home during the night, motoring at any hour of the night alone with

him, and living with him in his secluded summer home, unless impelled by illicit passion. The only inference to be drawn from the evidence is that defendant was guilty of adultery. If she has been injured by the rule allowing proof of adultery by circumstantial evidence, she has only herself to blame, for by her reckless conduct she has made the conclusion of guilt inescapable.

The decisive question on this appeal is whether testimony should have been admitted to show that complainant was guilty of adultery. The chancellor refused this testimony because (1) the answer and cross-bill did not allege adultery, and (2) defendant could not properly amend after the trial commenced. By express provision of statute, either the complainant or defendant in any case in a court of equity has the right to amend the bill of complaint or answer at any time before final decree, so as to bring the merits of the case fairly to trial. Code, 1939, Art. 16, Sec. 18. We have held, however, that the right to amend is not a right *ex debito*, but is subject to the sound discretion of the court. In other words, it may be stated as a general rule that the chancellor is clothed with discretion in allowing or refusing amendments at any time before final decree, and such discretion will not be reviewed in the absence of its abuse. *Engle v. United States Fidelity & Guaranty Co.*, 175 Md. 174, 200 A. 827; *Funkhouser v. Mooers*, 179 Md. 266, 269, 18 A. 2d 205. Since 1842, when the Legislature of Maryland conferred jurisdiction in all applications for divorce upon the courts of equity of this State (Acts of 1841, Ch. 262, Code, 1939, Art. 16, Sec. 38; *Miller v. Miller*, 185 Md. 79, 42 A. 2d 915), this Court has recognized the essential difference between a divorce suit and the ordinary chancery case. In all suits for divorce the court sits, not in the exercise of its ordinary chancery jurisdiction, but as a divorce court and is governed by the rules and principles established in the ecclesiastical courts in England so far as they are consistent with the provisions of the Code. In the ordinary case the parties may agree as to what

facts shall be submitted to the court, and may waive by agreement any rights which they may have but do not care to exercise. But in a divorce suit the public policy of the State requires that the marriage relation shall not be severed except for the causes and in the manner prescribed by law. *Amend v. Amend,* 135 Or. 550, 296 P. 875, 76 A. L. R. 986, 989. This policy is founded upon the necessity (1) for the protection of the interests of children and other persons who, though not parties to the cause, might be deeply affected by its decision, and (2) for the preservation of the public morals. In *Fisher v. Fisher,* 95 Md. 314, 319, 52 A. 898, 93 Am. St. Rep. 334, 76 A. L. R. 1002, Judge Page observed that in some States a divorce suit is regarded as a triangular proceeding, in which the State may be represented by the appearance of its proper officer for the more efficient maintenance of these principles; but while there is no statute in Maryland authorizing the appearance of a public attorney, the duty of protecting the public interests is none the less in the care of the chancellor, and he should be extremely careful in enforcing the policy and principles of the law lest by the suppression of important evidence the court may be the medium of obtaining a decree to which neither of the parties is legally and justly entitled.

It is an accepted rule of equity pleading that recrimination is an affirmative defense which must be specially pleaded in the answer to entitle the defendant to present proof of such defense. This rule, however, pertains merely to the rights of the parties under the pleadings. So, where it appears that the complainant is guilty of recrimination, it is not only the right but the duty of the chancellor to refuse a divorce, although the defense of recrimination is not formally pleaded. *Geisselman v. Geisselman,* 134 Md. 453, 463, 107 A. 185; *Duckett v. Duckett,* 143 Md. 551, 559, 123 A. 55; *McFrederick v. McFrederick,* 160 Md. 91, 152 A. 818; *Young v. Young,* 94 N. J. Eq. 155, 119 A. 92, 25 A. L. R. 1049. Following the Mosaic and canon law the ecclesiastical courts re-

fused to grant a divorce when the husband and wife were guilty of some offense which constituted a cause of divorce, whether the offenses were similar or not. 2 *Bishop, Marriage, Divorce and Separation,* Sec. 342; 2 *Schouler, Marriage, Divorce, Separation,* 6th Ed., Sec. 1721. As a divorce *a mensa et thoro* is practically nothing more than judicial permission to live separate and apart, *Gellar v. Gellar,* 159 Md. 236, 241, 150 A. 717, a suit for a divorce *a vinculo matrimonii* is not barred by recrimination merely because the conduct of the complainant was such as to entitle the defendant to a divorce *a mensa et thoro. Appeltofft v. Appeltofft,* 147 Md. 603, 128 A. 273. But it is clear that a divorce to one of two equally guilty spouses is just as definitely against the provisions and policy of the law as any other divorce which the law forbids. The law is established that a husband who has committed adultery is absolutely barred from a divorce on the ground of adultery or any other matrimonial offense committed by his wife, even though he may have committed the adultery after he left his wife on discovering her offense. *Green v. Green* 125 Md. 141, 144, 93 A. 400; *Martin v. Martin,* 141 Md. 182, 118 A. 410. At the trial in the court below defendant's solicitor, in asking for leave to amend, explained that he did not obtain the facts as to recrimination until the first day of the trial, but that the witnesses were in court ready to testify to the facts. Apparently the proffer was made in good faith and not for the purpose of delay. In such circumstances it is the duty of the chancellor either (1) to admit the evidence without the necessity of amendment by mutual consent of the parties, or (2) to allow the defendant to amend by setting up the charge of recrimination. As we have come to the conconclusion that the chancellor abused his discretion, we will reverse the decree and remand the cause for further proceedings with respect to the charge of recrimination.

The decree also orders Mrs. Dougherty to pay $178 to C. Hoffberger Company for fuel oil delivered at her residence at 41 Overbrook Road. It is a fundamental

principle that the authority of a wife, when separated from her husband without fault on her part, to bind him for necessaries, even in the absence of any express promise, is implied only when he has made no suitable provision for her support. If he has made such provision, he is not bound to make good her contracts for necessaries. As alimony is an award made by the court for food, clothing, habitation and other necessaries for the maintenance of the wife *(Hood v Hood,* 138 Md. 355, 113 A. 895, 15 A. L. R. 774), the husband, if he duly pays the required alimony, whether it is permanent or a temporary award during the pendency of the suit, will not be liable for any necessaries subsequently furnished. Moreover, while the duty of the husband to provide for his wife's support may make him answerable in a suit at law for debts incurred for necessaries, such a liability cannot be made the basis of alimony, for alimony is not a debt and the court has no authority to convert debts into alimony. Under the law of this State no allowance to a wife is considered as alimony which does anything more than provide for the payment of money at stated periods for her support during the joint lives of the parties as long as they are separated. The equity court, which awards alimony in the manner established by the English ecclesiastical courts, Code, 1939, Art. 16, Sec. 14, has no power, unless conferred by the Legislature, to transfer the property of either spouse to the other, or otherwise to dispose of it. We have no statute in Maryland authorizing the court to adjust the property rights of the parties in a suit for divorce, except to award to the wife such property or estate as she had when married. Code, 1939, Art. 16, Sec. 41; *Hall v. Hall,* 180 Md. 353, 24 A. 2d 415. Thus, any provision in a decree of divorce which orders the husband to pay taxes on real estate which he and his wife hold as tenants by the entireties is ineffective as an award of alimony, and is void if there is no agreement to support it. Likewise, a provision in a decree which requires the husband to pay the interest on a

promissory note executed jointly by him and his wife is not an allowance of alimony and is accordingly void. *Roberts v. Roberts,* 160 Md. 513, 522, 154 A. 95.

On the other hand, if the oil, delivered to the wife in this case, was purchased by the husband, we can find no justification for the chancellor's order. It appears from the record that defendant, through thrift and economy, has managed to get a monthly income of about $50. By living with her daughter on the first floor of the home, she has been able to rent the second floor for $40 per month. In addition, her income from her savings amounts to about $10 per month, for she stated that she has over $3,000 on deposit in savings accounts and owns stock worth about $1,000. But her husband has been getting a salary of $4,740 a year. In applying for alimony, a wife is not asking for favors but demanding rights, and she is entitled to demand such support in reasonable comfort as her husband is able to furnish from his property or earnings. In determining the award of alimony, the court should consider the maintenance of the wife in accordance with the husband's duty to support her suitably. In addition to the financial circumstances of the parties, the court usually considers their station in life, their age and physical condition, their ability to work, the length of time they lived together, the circumstances leading up to the separation, the fault which destroyed the home, and their respective responsibilities for the care and support of the children. *Timanus v. Timanus,* 178 Md. 640, 16 A. 2d 918.

Defendant's second appeal is from the order dated March 1, 1946, dismissing her petition for alimony pending appeal, for counsel fee for prosecuting the appeal, and for costs of appeal. This order also must be reversed. The law is plain that the court in a suit for divorce should require the husband to pay alimony and reasonable counsel fee for services rendered his wife both in the trial Court and in the Court of Appeals when it appears that the wife's income is insufficient to care for her needs. A wife's petition to require her husband to pay

her solicitor a fee for the prosecution of an apepal and also to pay her costs of appeal should be acted upon by the chancellor, as such matters are within the jurisdiction of the trial court after the appeal has been entered. Code, 1939, Art. 16, Sec. 17; *McCurley v. Stockbridge,* 62 Md. 422, 50 Am. Rep. 229; *McClees v. McClees,* 160 Md. 115, 130, 152 A. 901; *Timanus v. Timanus,* 178 Md. 640, 16 A. 2d 918; *Stirn v. Stirn,* 183 Md. 59, 36 A. 2d 695. The decree in this case ordered complainant to pay defendant's solicitor a counsel fee of $150 for services in the court below. In our opinion the chancellor should order him to pay the additional sum of $150 to defendant's solicitors as counsel fee on appeal.

*Decree and order reversed, and cause remanded for further proceedings, with costs.*