WILLIAM F. LICKLE *v.* MARGARET LEE LICKLE

[No. 118, October Term, 1946.]

404

Decided May 14, 1947.

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*M. William Adelson*, with whom was *S. Raymon Dunn* on the brief for appellant.

*Kenneth C. Proctor*, with whom were *H. Courtenay Jenifer, Walter M. Jenifer* and *John Grason Turnbull* on the brief, for appellee.

DELAPLAINE, J., delivered the opinion of the Court.

William F. Lickle, an insurance agent, of Towson, is appealing here from a decree of the Circuit Court for Baltimore County granting his wife, Margaret Lee Lickle, a divorce *a vinculo matrimonii*. He contends that the evidence fails to support her charge of adultery.

The parties were married in 1917. They had three children, who are now adults. Appellant, a captain in the First World War, is now over 55. The parties have not cohabited as man and wife for many years, although they resided in the same house. In 1937 appellant met A. Gordon Boone, a young Towson lawyer, and his wife, Edith Flint Boone, the co-respondent in this case. Appellant frequently visited their home on Bellona Avenue, went to parties with them, and accompanied them to the races. From 1939 to 1946 appellant served by appointment of the Governor as trial magistrate at large for Baltimore County.

In July, 1942, Boone received a commission in the United States Navy. After naval training in this country, he served in the Pacific and later in the European theater of operations. During the years when Boone was in the service, appellant became increasingly intimate with Mrs. Boone. She changed her residence four

times during that period: to Homeland on November 1, 1942; to Owings Mills on October 1, 1943; to Riderwood on May 1, 1944; and to Ruxton on May 1, 1945. But in each of these homes appellant was a frequent visitor. One of Mrs. Boone's maids testified that he was at the home at Owings Mills "most of the time." Another maid testified that he visited Mrs. Boone in her homes at Riderwood and Ruxton on numerous occasions, staying all night several times a week, and eating many meals there. She also testified that appellant and Mrs. Boone often went motoring together, returning late at night.

Twice during the summer of 1943 appellant and Mrs. Boone vacationed together at Ocean City, Maryland. The first time was early in June, when they stopped at the Delmar Hotel. On that occasion appellant was accompanied by one of his sons, while Mrs. Boone and her elder son, Gordon, Jr., then ten years old, had rooms across the hall. The second trip was entirely different. Appellant and Mrs. Boone, traveling together in an automobile, arrived in Ocean City on July 23. They were unaccompanied. Mrs. Boone had sent her ten-year-old son to camp, and had left her one-year-old son at home with a nurse. Appellant registered at the Ambassador Apartments for both himself and Mrs. Boone, and during the next two weeks they occupied rooms on the third floor of the building. The first night they occupied adjoining rooms with connecting bathroom. After the first night appellant took another room across the hall, but they visited each other's room frequently, sometimes until after midnight. It further appears that in September, 1944, appellant drove Mrs. Boone and her two boys on a trip to Cumberland, and at the Fort Cumberland Hotel, where they spent the night, appellant registered for the party as "William F. Lickle and family."

Boone testified that he had not had sexual relations with his wife since September, 1943. In October, 1943, when he was home on a furlough, she repulsed his advances without any explanation. Three other times—when he returned from Europe in 1944, in June, 1945,

and in October, 1945—she again refused to have relations with him. He then accused her of being fond of another man, and he suspicioned that it was Lickle. In January, 1945, he was ordered to Chicago to act as instructor in amphibious warfare at Northwestern University. He pleaded with her to go with him to Chicago, but she refused even to visit him at any time during the year, although Gordon, Jr., came to see him in September. He returned home in October, and received his honorable discharge in December, 1945. Several days after Christmas, Boone confronted Lickle with the charge that he had committed adultery with Mrs. Boone. Lickle denied that there had been any improper conduct. Boone thereupon asserted that he could not imagine a woman wanting a divorce unless there were another man in the case. Lickle retorted: "Yes, I can imagine that very easily. * * * Time will prove whether your thoughts in this matter are correct or incorrect."

In a suit for divorce the burden of proof is on the complainant, but the charge of adultery as a ground for divorce need not be proved beyond a reasonable doubt. *Sterling v. Sterling,* 145 Md. 631, 635, 125 A. 809. Judge Robinson stated that no general rule can be laid down as to what facts shall constitute proof of adultery, because the same presumptions do not always follow the same facts, the weight of presumptions depending upon the character, habits and situation of the parties, and the question of guilt or innocence depends upon the facts and circumstances of each particular case. *Kremelberg v. Kremelberg,* 52 Md. 553, 555. However, it is broadly stated that the evidence sufficient to prove the charge of adultery must be so clear, satisfactory and convincing as to lead the unprejudiced mind of a reasonable and prudent man to that conclusion. *Swoyer v. Swoyer,* 157 Md. 18, 145 A. 190; *Bowler v. Bowler,* 183 Md. 493, 39 A. 2d 538. We have also stated that circumstantial evidence required to prove a charge of adultery in a divorce case must show (1) an opportunity to commit the offense, and (2) a disposition to commit it. *Dougherty v. Dough-*

erty, 187 Md. 21, 48 A. 2d 451; *Hockman v. Hockman,* 187 Md. 340, 50 A. 2d 136.

In the instant case appellant and the co-respondent had innumerable opportunities to commit adultery. If these opportunities were not afforded at the co-respondent's home where the two boys and Boone's 75-year-old father lived, they unquestionably existed on the many automobile trips and at Ocean City. It is appellant's contention that the evidence fails to show an adulterous disposition. He claims that he cultivated merely a Platonic friendship, which began about ten years ago. He says that he enjoyed talking with Boone's father, and that he helped the family in locating new homes and in various other ways while Boone was overseas. In a suit for divorce brought on the ground of adultery, frequent opportunities for adultery with a co-respondent and even acts which are highly indiscreet are not sufficient to establish guilt, in the absence of an adulterous disposition, unless the parties were together under suspicious circumstances which cannot readily be explained except on the assumption of the corrupt design. *Renner v. Renner,* 177 Md. 689, 12 A. 2d 195, 127 A. L. R. 674. On the other hand, while opportunity to commit adultery is not in itself sufficient to justify a finding of its commission, in the absence of evidence of a disposition to commit it, such a disposition may be inferred from the conduct of the parties and the surrounding circumstances. *Pryor v. Pryor,* 146 Md. 683, 131 A. 47; *Wendel v. Wendel,* 154 Md. 11, 24, 139 A. 573; *Dougherty v. Dougherty,* 187 Md. 21, 48 A. 2d 451; *Hockman v. Hockman,* 187 Md. 340, 50 A. 2d 136. In this case appellant did not satisfactorily explain why he left his own wife so frequently and stayed all night at the home of Mrs. Boone on Bellona Avenue, and afterwards in her homes at Homeland, Owings Mills, Riderwood and Ruxton. He admitted that he had bought intoxicating liquors at a liquor store in Towson and charged them to Mrs. Boone. He also made a Victory garden in her yard, and her servant washed his clothes for him. Quite significant also was the testi-

mony of J. Tyson Lee, of Frederick County, who had been for many years an intimate friend of Boone and his wife. Lee testified that on one occasion, when he called to see Mrs. Boone while her husband was in the Navy, he found her getting ready to go swimming with Lickle, and when he suggested that he would like to go along with them, she made it plain that she did not want him, and he noticed that he was "getting in the way."

In January, 1946, notwithstanding Boone's positive accusation, appellant continued to enjoy Mrs. Boone's companionship, dining with her on one occasion in Miller's Restaurant in Baltimore. Mrs. Boone also consulted an attorney with the object of getting a divorce. On February 7 she left her husband and went to Delaware. At last, on February 21, Boone instituted suit for divorce alleging specifically that his wife had committed adultery with Lickle from April, 1943, until February, 1946. His wife made no defense to the suit. Instead, she went on a trip to Florida. After spending the month of March at Daytona Beach, she decided to live in New York. Although she abandoned her husband and failed to answer his charge of adultery, Lickle, the co-respondent, sought to intervene in the suit. He insisted that he and Mrs. Boone were innocent, but after a lengthy hearing the Court granted Boone a divorce *a vinculo matrimonii*. Lickle then entered an appeal, but the Court of Appeals held that a person named as a co-respondent in a suit for divorce brought on the ground of adultery has no right to intervene, and accordingly has no right to appeal from the decree. *Lickle v. Boone*, 187 Md. 579, 51 A. 2d 162. All of the evidence in that case was used by stipulation in the instant case. The chancellor saw the witnesses and had the opportunity to observe their demeanor and manner of testifying. In passing upon their credibility, he reached the conclusion that appellant's denial of adultery was not credible.

In all appeals in equity, the chancellor's findings of fact, based upon evidence taken in open court, will be sustained, unless the Court of Appeals is convinced that

such findings are clearly unwarranted by the evidence in the record. *Moran v. O'Brien,* 156 Md. 221, 144 A. 257; *Nicodemus v. Nicodemus,* 186 Md. 659, 48 A. 2d 442, 455. Our judgment in sustaining the chancellor's finding in this case is strengthened by the fact that appellant was evasive. When he was asked how many times he stayed all night at the home of Mrs. Boone, he said: "I have no idea." When asked whether he visited her as often as twice a week, he replied: "I couldn't tell." When requested to tell who was with him on his trip to Ocean City during the two weeks beginning July 23, 1943, he replied: "No particular person." Pressed to say whether Mrs. Boone was with him, he asked: "What do you mean by 'with me'?" Then, asked definitely whether Mrs. Boone accompanied him to Ocean City, he replied with uncertainty: "I have tried to think of that. I don't think Mrs. Boone accompanied me, but I can't be sure." While the manager of the Ambassador Apartments testified that appellant had paid for the rooms for himself and Mrs. Boone, appellant testified that he could not recall who had paid the bill, although he would not deny that he had paid it.

Moreover, appellant's testimony was inconsistent and unreliable. At first he positively denied that he had been in Florida while Mrs. Boone was there, declaring that he was in Savannah during the entire ten days he was away from Towson. He also swore that he had not even talked with Mrs. Boone by telephone since the latter part of January or the first part of February. The records of the telephone company were then produced. These records showed that appellant had phoned to his office in the Masonic Building in Towson from Daytona Beach, Florida, on March 8, and from New Symrna, Florida, on March 12. Recalled to the stand, he then admitted that he had phoned his office from both New Symrna and Daytona Beach. It was also found from the long distance records that two calls had been made from appellant's office to Daytona Beach later in March. In his attempt to explain his inconsistency, he told the Court

that a man had phoned him at his home that he wanted to speak to him about the Boone divorce case; that he went to his office to meet him; and that the man "was making every effort to get Mrs. Boone back here to defend this case," but he could not inform the man where she was staying in Florida. Appellant further testified: " 'Well,' he said, 'I would like to make a telephone call, and I have an idea where she is. If I make a telephone call to her, will you talk to her?' I said, 'I will not.' He said, 'Do you mind if I use the phone?' I said, 'I do not.' So he used the telephone, and I stepped out of the office. * * * The same man returned, and again insisted that, if he were able to contact Mrs. Boone, I would talk to her, and I told him I had nothing to do with it at all."

It is our conclusion that the conduct of appellant, a married man, and Mrs. Boone, a married woman, was not consistent with innocence. After carefully considering the evidence, we find no reason to disturb the chancellor's decree.

*Decree affirmed, with costs.*