MEININGER *v.* MEININGER

[No. 23, October Term, 1951.]

*Decided November 2, 1951.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, HENDERSON and MARKELL, JJ.

*Edwin J. Wolf,* with whom was *Arthur R. Padgett* on the brief, for appellant.

*Martin Beerman* for appellee.

HENDERSON, J., delivered the opinion of the Court.

From a decree of divorce *a vinculo* granted to the husband on the ground of adultery, the wife appeals. The significant episode upon which the chancellor based his finding occurred while the husband was absent on a trip to Maine, in October, 1950.

The husband's mother testified that she went to her son's home unexpectedly about ten o'clock in the morning and found the wife dressed in a petticoat and intoxicated. An unknown man was asleep in her bed. Raymond Clark came in with a bottle of wine he had gone out to purchase. The kitchen table was covered with liquor stains

and in great disorder. It was admitted that Clark and the other man, known to Clark only as "Calvin" and not previously known to the appellant, had come to the apartment about two in the morning and had spent the night. Clark had known the Meiningers for many years and had been a frequent visitor in their home. He lived only a block away. The wife testified that she let them sleep in the basement and denied that any of them had drinks. Clark on the stand admitted having "a few beers". He says he slept in the basement and denied having had intercourse with the appellant. It was shown that he had admitted intercourse with the appellant in a statement given to the husband's lawyer before the trial. He testified he was drunk when he gave the statement.

There was no direct evidence of the wife's intimacy with Clark on this or other occasions, but there was abundant testimony of her addiction to drink, and testimony of improper familiarities with Clark's step father, Blake, in November, 1950, after she had left the home. This was denied by her and Blake, but it was shown that Meininger assaulted Blake at the time of the alleged occurrence, for which he was fined by a magistrate.

It is elementary that to sustain a finding of adultery there need not be direct proof of actual intercourse. Upon a showing of disposition and opportunity, misconduct may be inferred. *Lickle v. Lickle,* 188 Md. 403, 407, 52 A. 2d 910. In some cases, where the testimony is taken by an examiner, we must form our own opinion as to its weight. *Vogts v. Vogts,* 189 Md. 312. But where the testimony is heard in open court we are loath to disturb the findings of a chancellor, and will not do so unless the conclusion is insupportable. Cf. *Dougherty v. Dougherty,* 189 Md. 316, 320, 55 A. 2d 787, 2 A. L. R. 303, and *Dougherty v. Dougherty,* 187 Md. 21, 28, 48 A. 2d 451. In the instant case we think misconduct can be inferred from the circumstances, and the patently inadequate explanations of the wife and alleged paramour.

What we said in the case of *Blades v. Blades,* 194 Md. 505, 509, 71 A. 2d 293, 294 is applicable here: "As the case turns ultimately on questions of veracity and the trial judge saw and heard the witnesses (except perhaps one whose pre-trial deposition was offered), the rule that the judge's findings of fact will not be set aside unless shown to be clearly wrong, is applicable with full force and should be controlling. It is unnecessary and perhaps inappropriate to say more."

*Decree affirmed, with costs.*