## BURGER *v.* BURGER

[No. 139, October Term, 1953.]

*Decided May 21, 1954.*

The cause was argued before BRUNE, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*John Wagaman,* with whom were *Wagaman & Wagaman* on the brief, for the appellant.

*Martin V. S. Bostetter* and *T. Aubrey Kemp* for the appellee.

COLLINS, J., delivered the opinion of the Court.

This is an appeal by Vesta M. Burger from a decree dismissing her bill of complaint for a divorce on the ground of the adultery of her husband, Samuel B. Burger, appellee, after a hearing in open court before the chancellor.

The parties were married on December 7, 1932, and have a son, who was twenty years of age at the time of the hearing in this case. On July 20, 1951, the appellant packed her clothes and left the home of the parties on a farm in Washington County, because of the alleged cruelty of her husband. It is practically admitted that the husband was guilty of adultery after his wife left. The question before this Court is whether the marital misconduct of the appellant was such as to bar her from a divorce on the ground of recrimination as found by the chancellor, who was of the opinion that both were "tarred with the same stick". As there appears no doubt of the husband's guilt, we will confine the recital of the testimony to the conduct of the wife.

After appellant left her husband she secured employment at Rebasco's Sunset Tavern about three miles west of Hagerstown, where she was employed from July, 1951, until April or May, 1952. While employed there she became acquainted with one Nevin Cronise, a married man who had been married three times previously, and who frequented the tavern while she was employed there. There was testimony that on one occasion in the tavern Nevin Cronise had his arm around appellant while five to ten records were being played on a "juke box." This is not denied. They left the tavern together on several occasions at closing time about one o'clock A. M. They were seen together frequently in her automobile, both in the daytime and at night. There is also evidence that while riding in the automobile the parties sat unusually close together. The appellant and Nevin Cronise were seen to leave appellant's apartment house on a number of occasions between seven and eight-thirty A. M. Ap-

pellant admits that Nevin slept in her apartment at least six times during the daytime or early evening. She explains this by saying that she altered and repaired clothing and that on those occasions, while she was working, he came in and brought clothes to be repaired and fell asleep. It can be fairly inferred that he kept at least part of his clothes in appellant's apartment. She admits that she and Nevin were alone in her apartment at least a dozen times. Appellant also admits that Nevin would arrive at her apartment late and leave his clothes to be cleaned and sometimes stay as late as midnight.

In July, 1952, Nevin, with his uncle, Bruce Cronise, by whom he was employed, planned a trip to the tomato market at Tampa, Florida. Mrs. Bruce Cronise, who was then pregnant, wanted to go along on the trip but could not drive. Nevin says he knew that appellant was not working and had an automobile, and he asked her to drive Mrs. Bruce Cronise to Tampa with the understanding that, as appellant did not have sufficient money for the trip, she would only be required to pay for her meals and the other expenses would be paid by Bruce. Nevin and Bruce left for Tampa on July 23rd or 24th. Appellant and Mrs. Bruce Cronise left for Tampa together on the morning of July 25th, arriving in Florida on July 26th. Nevin states that he registered at the Lafayette Hotel in Tampa as "Mr. and Mrs. Bruce Cronise and Mr. and Mrs. Nevin Cronise". He says he did this because he did not want to cause the appellant any embarrassment when she arrived at the hotel. When the women arrived in Tampa, they communicated with the Cronise men by telephone and learned that rooms had been obtained for them at the Lafayette Hotel, where they immediately went. The Cronises and the appellant all testified that they occupied two communicating rooms in the hotel, in one of which the appellant stayed with Mrs. Bruce Cronise. Nevin and Bruce slept in the other room until Saturday, August 2nd, 1952, when Mrs. Bruce Cronise suddenly became ill and left with her husband

to return to Hagerstown before his work there was completed. Nevin stayed to finish the work and at about 6 P.M. on the same day he left with appellant in her automobile for Hagerstown. The appellant and Nevin testified that they drove all night and through most of that Sunday until Sunday evening when they stopped and registered at a motel. Nevin says he registered in "her name and my name". They stayed in two separate noncommunicating rooms which adjoined and continued the trip on Monday to Hagerstown. The appellant did not remember the name of the motel or in what state it was situated. Nevin testified that the motel was located in the State of South Carolina near Summerton but did not remember its name.

Where it appears that the complainant is guilty of recrimination it is not only the right but the duty of the chancellor to refuse a divorce even though the offense of recrimination is not formally pleaded. *Dougherty v. Dougherty*, 187 Md. 21, 30, 48 A. 2d 451, and cases there cited. It is well settled in this State that, while the doctrine of recrimination is recognized here, in a suit for a divorce on the ground of adultery, the recrimination charged by the defendant against the plaintiff must be for a cause *a vinculo matrimonii* and not for one *a mensa et thoro,* merely. *Saltzgaver v. Saltzgaver*, 182 Md. 624, 627, 35 A. 2d 810, and cases there cited. Therefore, to deny the appellant a divorce, it must be found that she was guilty of adultery.

Adultery in a divorce case need not be proved beyond a reasonable doubt. Broadly stated, the evidence, however, must be such as to convince a reasonable and prudent man. There must be evidence to show a disposition to commit the act and the opportunity. *Lickle v. Lickle*, 188 Md. 403, 407, 52 A. 2d 910. The courts must decide questions of fact from the evidence and the parties have only themselves to blame when, by their own conduct, they furnish the evidence of their own condemnation. While the single act of Nevin in putting his arms around the appellant for some length of time

in public would not alone be evidence of a disposition to commit the offense, however, in this case we find them frequently riding unusually close together in her automobile and his numerous visits to her apartment, where on occasions he slept during the daytime and in the late evening.  The trip to Florida and the fact that some of his clothes were in her apartment at frequent times indicates more than a platonic friendship based solely on mental and spiritual attraction.  Of course, there is no doubt that there were frequent opportunities for the offense of adultery to be committed.  It is unnecessary from the evidence to point out such opportunities.  As strenuously argued by the appellant, relying on the case of *Renner v. Renner*, 177 Md. 689, 12 A. 2d 195, the stigma of such an offense is so degrading and humiliating that proof of such offense should not be accepted unless it would convince a reasonable and unprejudiced person of the guilt of the accused.  However, courts must not be duped.  They will judge facts as other men of discernment, exercising a sound and sober judgment on the circumstances proved before them.  *Shufeldt v. Shufeldt*, 86 Md. 519.

Here, of course, the chancellor had the atmosphere of the trial and the opportunity to observe the appearance and demeanor of the witnesses and, as was said in *Collins v. Collins*, 184 Md. 655, 664, 42 A. 2d 680: "If the record left us in doubt, we should not disturb the findings of facts."  Of course, in appeals in equity the finding of fact by the chancellor, based upon evidence taken in open court, will not be reversed on appeal unless we are convinced that such findings are clearly erroneous, which we do not find in this case.  On the contrary, we are of opinion that hardly any other conclusion than that found by the chancellor could be reached from the facts in the instant case which appellant by her own conduct has created.  *Pekar v. Pekar*, 188 Md. 360, 52 A. 2d 468.  The decree will be affirmed.

*Decree affirmed, costs to be paid by the appellee.*