# ABARE v. ABARE

[No. 129, September Term, 1959.]

*Decided February 16, 1960.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Robert E. Bullard,* for appellant.
No brief and no appearance for appellee.

BRUNE, C. J., delivered the opinion of the Court.

The appellant wife, Mabel Abare, brought suit against the appellee husband, John Abare, Jr., in the Circuit Court for Montgomery County for a divorce *a vinculo matrimonii* on the ground of adultery. At the conclusion of the testimony on August 14, 1959, the Chancellor gave an oral ruling in which he announced that the bill of complaint would be dismissed. This oral ruling was transcribed and a copy thereof was filed in the case and entered on the docket on August 17, 1959, but no actual decree appears to have been entered, nor is the transcript of the oral ruling signed. It seems, however, to have been regarded as if it were an actual order or decree. A remand solely for the entry of a formal decree (which we think should have been entered) would merely bring the case back without any further light to guide us in considering the questions which the record presents. Since we have concluded that the case should be remanded for other reasons, we shall not consider this point further.

The case comes before us on the appeal of the wife from the "decision" of the Circuit Court and we have her brief and appendix. There is no brief and no appearance in this Court on behalf of the appellee. We observe that the copy of the "Oral Ruling of the Court" printed in the appellant's appendix is in exact conformity with the oral ruling as contained in the transcript of the testimony and proceedings filed in the clerk's office on September 9, 1959, but that it differs from the transcript of the ruling as filed in the clerk's office on August 17, 1959. The version contained in the transcript and copied into the appellant's appendix seems badly garbled in some respects. We therefore shall treat the version filed on August 17, 1959, as the correct statement of the Chancellor's findings and holding.

The first paragraph of the oral ruling states the nature of the case; the last deals with costs and counsel fees. The three paragraphs now pertinent read as follows:

"The cases in Maryland are clear that in order to prove adultery sufficiently, while you need not see

them in the act you must prove time, opportunity, and adulterous disposition.

"Without commenting on the recrimination concerning which counsel for the parties have argued, the court finds no evidence whatsoever of an adulterous disposition. As to time and opportunity, the plaintiff has presented some evidence but these elements have not sufficiently been proven to the satisfaction of the court, so the court has no choice whatsoever but to deny the relief requested.

"To prove adultery, which is a serious allegation, the evidence must be clear and it just was not proven in this case. The bill of complaint will therefore be dismissed."

The appellant makes two contentions: first, that there was sufficient evidence to prove the husband guilty of adultery, and specifically that the proof of an adulterous disposition was sufficient; and second, that since recrimination was not pleaded as a defense, evidence with regard thereto was not admissible.

Both the version of the trial court's oral ruling quoted above and the version contained in the appendix make it clear that the Chancellor found "no evidence whatsoever of an adulterous disposition." This is the principal target of the appellant's attack. The quoted version is somewhat clearer than the version contained in the appendix in stating the Chancellor's view as to the insufficiency of the evidence to prove time and opportunity, but still leaves some uncertainties.

We shall first outline briefly what seem to be the important parts of the evidence bearing upon the wife's charge.

The parties were married in January, 1950, lived together more than five years, had three children, and separated in November, 1955. The wife brought suit for a limited divorce charging cruelty and the husband filed a cross bill charging adultery and desertion. The husband was awarded a divorce *a mensa* on the ground of desertion. Custody of the children was awarded the wife, and the husband was ordered to make

payments for their support. The couple owned a house and lot as tenants by the entireties. The husband continues to occupy it and no one else lives there. A woman whom we shall refer to as the "corespondent" or as "Mary Ann" has been a visitor on a number of occasions. The children visit Mr. Abare on Sundays, and Mary Ann has been there with them on some Sundays.

The testimony shows that at some time after the separation of the parties, the husband began seeing Mary Ann, that she sometimes accompanied him when he picked the children up on Sundays or when he returned them to the wife's residence and that Mary Ann prepared or helped to prepare breakfast for them at the husband's house on Sundays. There was no evidence of any public display of intimacy or affection between them, but there was testimony as to lengthy evening visits by Mary Ann to Mr. Abare's house. The precise number is not shown, but it appears from the testimony of both the husband and the corespondent that they were not infrequent. Two such visits—one on Saturday, February 28, 1959, and the other four weeks later, on Saturday, March 28, 1959—were testified to by Mrs. Abare and by a private detective employed by her, and as to the second of these occasions there was also some testimony by a friend of Mrs. Abare. The evidence was that on the first of these occasions Mr. Abare picked up Mary Ann at her apartment in Washington during the afternoon, that (apparently after a trip to a grocery store) they were seen to enter Mr. Abare's house at about 6:10 P.M., that at 9:30 the lights went out, that at 10:30 a light came on for a short time in the bathroom, and that up to midnight the corespondent had not left the house. The evidence as to her visit on March 28th was, in general, similar, except that the watch was continued until 4 A.M. on March 29th, without the corespondent having been seen to leave the house.

Both Mr. Abare and Mary Ann admitted that she visited Abare's house on a number of evenings and that she stayed fairly late. They both took the stand, claimed that they watched television on such occasions with the venetian blinds closed and the drapes drawn over them, and both denied ever having had sexual relations.

The rules of law governing a case of this sort are well established by a great number of cases in this court. Any extensive citation of authorities would be superfluous. As was said in *Dougherty v. Dougherty,* 187 Md. 21, 27-28, 48 A. 2d 451: "It is an established rule that the burden of proof in a suit for divorce is upon the complainant, and where adultery is charged the evidence must establish affirmatively that the alleged offense was committed. It is not necessary, however, to establish the charge of adultery by direct evidence of the commission of the act, for because of the clandestine nature of the offense it is rarely possible to obtain evidence of the commission of the act by the testimony of eyewitnesses. The offense may be inferred from the circumstances if the inference is the only natural and logical deduction to be drawn therefrom. To prove adultery, the circumstantial evidence must clearly establish (1) a disposition on the part of the defendant and the paramour to commit adultery, and (2) an opportunity to commit the offense. After considering these and all other facts and circumstances in the case, the court then determines whether the evidence would convince an unprejudiced and cautious person of the guilt of the defendant." See to like effect: *Swoyer v. Swoyer,* 157 Md. 18, 145 A. 190; *Lickle v. Lickle,* 188 Md. 403, 407-8, 52 A. 2d 910; *Meininger v. Meininger,* 198 Md. 432, 434, 84 A. 2d 61; *Burger v. Burger,* 204 Md. 495, 499-500, 104 A. 2d 923. Nor is it essential in a divorce proceeding that it be proved beyond a reasonable doubt. *Burger v. Burger, supra.*

We think that the Chancellor was clearly in error in his finding that there was "no evidence whatsoever of an adulterous disposition." It is true that in a number of cases in which such a disposition has been found, the evidence relied upon to support it has been some more or less public display of intimacy observed by others. That, however, is not essential as a matter of proof. Nor is the statement in *Sterling v. Sterling,* 177 Md. 683, 9 A. 2d 214, to the effect that more than mere opportunity must be shown to sustain the charge, controlling here to establish the insufficiency of the evidence. We think that the evidence, if believed, does show more than

mere opportunity. The repeated visits of the corespondent to the husband's home show abundant opportunity, and we think the circumstances of those visits are sufficient to warrant an inference of a disposition to commit adultery. These evening visits were fairly numerous, no one else was present, blinds and draperies were usually closed not only in the room used for television but also in the front room, the visits lasted far into the night (on one occasion at least until four o'clock the next morning), and on some Sunday mornings following Saturday evening visits the corespondent would be present at an early hour to help prepare breakfast, though it was a 30-45 minute trip each way between her apartment and the husband's house. She apparently had no car of her own and her testimony is that she would call a cab to take her home after one of their evenings spent in watching television.

These facts seem to us sufficient to support an inference of a disposition on the part of both the husband and the corespondent to commit the offense charged, as well as to show ample opportunity to commit it. For somewhat similar factual situations see *Steinla v. Steinla,* 178 Md. 367, 13 A. 2d 534, and *Hockman v. Hockman,* 187 Md. 340, 50 A. 2d 136.

In the *Steinla* case, the husband was charged with adultery with two different women. As to one, the evidence was held insufficient, since it did not exclude a reasonable possibility of innocence. As to the other, the evidence was held sufficient. This woman and the husband had been seen hugging and kissing outside a restaurant where they had been together and they had also been seen together in an automobile parked on a country road about midnight, and on that night the husband did not return to his home until after two o'clock in the morning. Their indifference to proprieties manifested by their display of affection outside the restaurant, which was relied upon as showing an adulterous disposition (178 Md. at 375), seems materially less than that manifested in the present case by the visits above referred to.

In the *Hockman* case, a wife who was receiving alimony payments from her husband under an *a mensa* decree, but who had never obtained an absolute divorce, showed affection

for a new acquaintance of dubious habits, accompanied him to various taverns and entertained him in her apartment after midnight. This was held to give "evidence of an adulterous disposition, which may be accepted as proof that she committed adultery when she had the opportunity." (187 Md. at 347.)

It was said in the *Hockman* case (also at p. 347 of 187 Md.) : "There is a possibility, of course, that Mrs. Hockman has not committed the offense with which she is charged, but the courts of equity cannot decide issues of this kind on mere possibilities, but must decide them in accordance with what would appear to be the fact from all the evidence in the guarded judgment of just and reasonable men of ordinary experience." The court then cited *Swoyer v. Swoyer, supra,* and *Bowler v. Bowler,* 183 Md. 493, 501, 39 A. 2d 538. It also referred to *Dougherty v. Dougherty, supra,* in support of the use of circumstantial evidence against those who, by an open and continued disregard of the usual moral and social conventions and decencies of life, have shown themselves indifferent to their marital obligations and to the opinion of those who know of their conduct.

In accord with the *Hockman* case as to the drawing of inferences are *Pekar v. Pekar,* 188 Md. 360, 52 A. 2d 468, and *Burger v. Burger, supra,* in the latter of which this court said (204 Md. at 500) : "However, courts must not be duped. They will judge facts as other men of discernment, exercising a sound and sober judgment on the circumstances proved before them. *Shufeldt v. Shufeldt,* 86 Md. 519. [39 A. 416.]"

The case comes before us in unsatisfactory form for final determination. We are of the opinion that the Chancellor was clearly in error in finding that there was no evidence whatsoever of an adulterous disposition. On the contrary, we think that the evidence, if believed, was ample to warrant an inference that such a disposition existed on the part of both the husband and the corespondent. We also are of the opinion that the evidence as to time and opportunity, if believed, was ample to establish those facts. Proof of exact time is not required, *Renner v. Renner,* 177 Md. 689, 12 A. 2d 195,

but it was quite explicit as to two occasions. Opportunity clearly existed on those occasions and on others admitted by the husband and the corespondent. Since time and opportunity really were not in dispute, we are unable to follow the Chancellor's statement that "these elements have not sufficiently been proven to the satisfaction of the court." It may be that he believed the denials of wrongdoing made by the husband and the corespondent, or that he did not believe some essential parts of the testimony offered on behalf of the wife, but that is not what he said.

We think it desirable that the Chancellor, who saw and heard the witnesses, should pass on such questions of fact as are in controversy, particularly those which may turn upon questions of credibility of the witnesses, and that he should then decide the case in the light of the rules of law applicable thereto which we have stated in this opinion.

As to the defense of recrimination, the Chancellor made no findings whatsoever, since he disposed of the case on other grounds. This phase of the case points up a problem of some difficulty with regard to the presentation of this defense. In *Dougherty v. Dougherty, supra,* it was stated that under the accepted rule of equity pleading recrimination is an affirmative defense which must be specially pleaded in order to entitle the defendant to present proof of such defense. In that case, the defendant's solicitor sought leave to amend so as to present that defense, and he stated that he had not obtained the facts with regard to recrimination until the day of the trial, and that the witnesses were in court and ready to testify. Leave to amend was refused. This was held an abuse of discretion, and the decree was reversed and the case was remanded for further proceedings with regard to that issue. It was held that the Chancellor should either have admitted the evidence by mutual consent of the parties or else have allowed the defendant to amend so as to set up this defense. The opinion also made it clear that the rule of equity practice requiring the defense to be specifically pleaded pertained "merely to the rights of the parties under the pleadings" and that "where it appears that the complainant is guilty of recrimina-

tion, it is not only the right but the duty of the Chancellor to refuse a divorce, although the defense of recrimination is not formally pleaded." (187 Md. at 30.) See also *Burger v. Burger, supra; Courson v. Courson,* 208 Md. 171, 117 A. 2d 850.

In the instant case neither of the procedures approved in the *Dougherty* case was followed. The complainant objected to the introduction of testimony in support of the defense of recrimination, so that mutual consent was out of the question. On the other hand, the defendant did not seek leave to amend. It appears, on the other hand, that this defense did not come as a complete surprise to the complainant since the defendant sought to raise it during the taking of a deposition about ten days before the trial. We believe that the preferable procedure would have been to require the defendant to amend so as to raise this defense and to have granted a continuance if necessary to enable the complainant to meet it. This course can be followed on remand. We do not, however, hold that it would constitute an abuse of the Chancellor's discretion to permit such a defense to be presented or inquired into without any amendment of the answer, provided the complainant is afforded an opportunity to rebut such testimony and is granted any reasonable continuance which may be necessary for that purpose. Public policy against granting a divorce where a valid defense exists is the basis upon which the question of recrimination is not left entirely to the control of the parties. *Fisher v. Fisher,* 95 Md. 314, 52 A. 898.

We shall not decide at this time whether or not this defense was sustained by the evidence, since that is primarily a question of fact and may depend upon the credibility of witnesses. The alleged basis for recrimination was adultery and the same rules of law would, of course, be applicable as those governing the proof of the wife's charge of adultery against the husband. It seems appropriate, however, to add that if we thought the evidence on this point would clearly call for a finding that the wife had been guilty of adultery, then although the matter had not been passed upon by the Chancellor, we should not have remanded the case for further proceedings. See Rule

885 of the Maryland Rules. Cf. *Courson v. Courson, supra,* 208 Md. at 176.

In accordance with the views above expressed, and pursuant to Rule 871 a of the Maryland Rules, this case will be remanded without affirmance or reversal for further proceedings not inconsistent with this opinion.

> *Case remanded, without affirmance or reversal, for further proceedings not inconsistent with the opinion of this Court; the costs of this appeal to be paid by the appellee.*