McKIM *v.* McKIM

[No. 278, September Term, 1960.]

*Decided May 8, 1961.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, HORNEY and SYBERT, JJ.

*Harry M. Sachs, Jr.,* with whom were *Sachs & Sachs* on the brief, for appellant.

No brief and no appearance for appellee.

BRUNE, C. J., delivered the opinion of the Court.

Lucy T. McKim, the appellant, filed a bill of complaint in the Circuit Court for Baltimore County for a divorce *a vinculo matrimonii* from Eugene McKim, the appellee, based on his alleged adulterous conduct. The Chancellor not finding "sufficient and clear and convincing proof of adultery" dismissed the bill. On this appeal the appellant claims that he erred in two respects, first, in holding that the evidence was insufficient to sustain a finding that the appellee had committed adultery, and second, in stating (by way of comment, but not as the basis of the court's ultimate decision) that the appellant had condoned the appellee's adulterous conduct by her continuing to live with him after she believed that he had committed adultery, but did not then have knowledge of it.

The appellant and appellee were married in September, 1940, the marriage did not run smoothly and they separated several times between 1951 (or thereabout) and September,

1958, when the wife left. Later in that month she filed a bill for divorce *a mensa et thoro* on the ground of desertion. This bill was thereafter dismissed without prejudice and the present litigation was instituted. The only charge pressed by the wife on this appeal is that of adultery.

The appellant's brother testified that one night some eight or nine years before the trial (which was in 1960) he and the appellee "double dated" two women, the companion of the appellee being an unidentified married woman with whom the appellee had had a "prolonged relationship" or "affair" lasting for six or seven months (but not further described), that some kissing and love making took place on the night in question between the appellee and this women while the two couples were in an automobile and that the appellee thereafter took this woman into his home, which was unoccupied by other persons at the time. He further testified that they remained there for some thirty minutes, during which the house remained unlighted, that at the end of that time the witness and his companion entered the house and that at that time, "you could see that there definitely had been an affair." The physical facts which the witness referred to in support of this observation were that "the clothes [were] all wrinkled up" and that "the girl's hair was messed up."

The husband abandoned an attempt to obtain a dismissal of the bill at the conclusion of the plaintiff's case (see *Phillips v. Phillips,* 215 Md. 28, 135 A. 2d 849) and testified in his own behalf. He was not questioned and made no statement whatever about the incident with regard to which his brother-in-law had testified. That testimony was not contradicted, though the Chancellor was, of course, not bound to believe it. The Chancellor's view with regard to that testimony is summarized in these three sentences: "There were no real admissions made by the parties and it seems to me just as consistent that they were having a necking party, as the expression goes, rather than actually committing sexual relations. I just can't conceive that a man would go into his own house to commit adultery while his brother-in-law is on the outside. Maybe it happened, but I'm not sufficiently convinced of it to justify so finding."

We are unable to agree with the Chancellor's conclusion. Apparently he accepted as true the testimony of the appellee's brother-in-law which we have set forth above, but found himself unable to draw from the known or observed facts therein stated the conclusion that adultery had been committed by the appellee. We, however, consider it the reasonable and almost inescapable inference to be drawn from those facts. We therefore cannot accept his view that it was as probable that the appellee and his woman companion left the automobile where they had been engaged in a "necking party" and entered the house merely to continue that same activity, as that they went in for the purpose of engaging in adultery. Certainly, mere maintenance of the *status quo* of the "necking party" which had been going on in the automobile would not have required a change of scene; and the husband's failure to deny or challenge the brother-in-law's testimony as to the events of that evening is, to us, significant. In our estimation the evidence was ample to show both adulterous disposition and opportunity to commit the offense, and to lead an unprejudiced person to draw the inference that it had been committed. *Snyder v. Snyder,* 159 Md. 391, 399, 150 A. 873; *Dougherty v. Dougherty,* 187 Md. 21, 48 A. 2d 451; *Abare v. Abare,* 221 Md. 445, 157 A. 2d 427, and additional cases therein cited. Accordingly, we think that the Chancellor was clearly in error in concluding that "there has not been sufficient and clear and convincing proof of adultery."

Furthermore, we are unable to conclude as did the Chancellor, that the appellant condoned the appellee's conduct by continuing to live with him after she suspected or even believed that he committed adultery. The record indicates that the appellant had no actual knowledge of the appellee's adulterous act until after she had become separated from him and had filed her first bill of complaint. The grounds for suspicion in this case are far less evident than were those in *Hoover v. Hoover,* 187 Md. 646, 51 A. 2d 166, where this Court stated that mere suspicion is not sufficient to constitute condonation.

For these reasons the decree is reversed and the case is

remanded for the entry of a decree in conformity with this opinion.

> *Decree reversed and case remanded for the entry of a decree in conformity with this opinion; the costs of this appeal to be paid by the appellee.*