PLUM *v.* PLUM

[No. 217, September Term, 1961.]

*Decided April 12, 1962.*

The cause was argued before HENDERSON, HAMMOND, PRES-COTT, HORNEY and SYBERT, JJ.

*Claude A. Hanley* for the appellant.

*Fred E. Weisgal,* with whom were *Rolf A. Quisgard, Jr.,* and *Weisgal & Albert* on the brief, for the appellee.

HAMMOND, J., delivered the opinion of the Court.

This divorce case turns entirely on the correctness of the chancellor's findings of fact. The appellant, Mrs. Plum, filed a bill for divorce *a mensa* on the ground of desertion by the husband. The appellee, Mr. Plum, filed an answer denying the desertion and a cross-bill which sought a divorce *a vinculo* on the ground of his wife's desertion and adultery. The chancellor found that Mrs. Plum had committed adultery and awarded Mr. Plum a divorce.

In her appeal Mrs. Plum contends that there was no clear and convincing evidence of adultery on her part, that there

was evidence of Mr. Plum's adultery which should have barred him from obtaining a divorce, and that the testimony of a corroborating witness should have been rejected because Mr. Plum gave a false address for the witness.

We find it clear that the chancellor could have properly been convinced of Mrs. Plum's adultery. Mr. Plum testified that one January evening through the window of the front room of the home of Mrs. Bussard (Mrs. Plum's mother), he saw his wife and a suitor named Suter having sexual intercourse on a sofa. Mrs. Bussard admitted that Mrs. Plum and Mr. Suter were in her house late on the evening in question, but maintained that Mr. Suter had left before she, Mrs. Bussard, had gone to bed. Mr. Plum had had the foresight to procure two eyewitnesses who also saw through the same window as he did the adultery he claimed. One was a young woman in whom he was interested, the other a girl who was a close friend of hers. The chancellor found the latter, who testified, to be truthful, credible and without bias, and felt that Mrs. Bussard had been mistaken and that "many things could have happened after she went to bed." We think the chancellor was justified in finding that the significant thing did happen.

Mrs. Plum did not allege adultery on the part of her husband either in her bill for divorce or as the affirmative defense of recrimination in her answer to Mr. Plum's cross-bill, but, nevertheless, "where it appears that the complainant is guilty of recrimination, it is not only the right but the duty of the chancellor to refuse a divorce, although the defense of recrimination is not formally pleaded." *Dougherty v. Dougherty,* 187 Md. 21, 30; see also *Abare v. Abare,* 221 Md. 445, 453-454.

There was considerable smoke as to the probability that Mr. Plum had, at some unspecified time, been adulterous, but no fire was shown, and we cannot say that the chancellor erred in not finding recrimination.

As to Mrs. Plum's final contention, we feel, as did the chancellor, that Mr. Plum's giving of a wrong address for the corroborating witness was not prejudicial to Mrs. Plum's case.

Mrs. Plum's attorney had had the witness' correct address a week before the hearing; he did not, upon receiving it, request a continuance, nor did he object in any manner until late in the hearing when she went on the witness stand. Furthermore, it was never shown that Mr. Plum's error was intentional.

*Decree affirmed, with costs.*